**Gary Gene VAN ZANDT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–94–00385–CR.

Court of Appeals of Texas,
El Paso.

March 28, 1996.

Eric L. Lindstrom, Midland, for Appellant.

Al W. Schorre, Jr., District Attorney of Midland County, Midland, for State/Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a conviction for the offense of aggravated robbery—enhanced by the allegation of a prior felony conviction. The trial court assessed punishment at 45 years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a $5,000 fine. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

At trial, the State utilized the testimony of Frances Parsons—the fifty-six-year-old victim. She related that she had an antique business and collected jewelry. She testified that on December 20, 1992, a Sunday, she was at her house on County Road in Midland County, Texas. She was packing for a trip and was deciding which jewelry to take on the trip and which jewelry she was going to put in her safety deposit box the next day. Earlier in the day at about 5 p.m., she thought she saw someone in her backyard. After looking out the window into the backyard, she satisfied herself that no one was there.

Just before 7 p.m. she was watering her yard. It began to rain and she went inside to watch a favorite television program. As she came in through the back door of the house, she saw an individual wearing a ski mask and holding a claw hammer. The victim thought the intruder was going to hit her on the head with the hammer. She testified that she grabbed for the hammer with one hand and attempted to gouge his eyes with the other hand. Her fingers slipped to the intruder's mouth and as she thought the individual would bite her fingers, she pulled her hand away. As a result of this, the mask came off and she recognized Appellant. The victim related that she knew Appellant through his girlfriend. They met at a flea market during the summer of 1991. She testified that she had gone out to dinner with them and they had been to her house on a number of occasions for joint buying and selling endeavors. Appellant had done some hauling for her on various occasions.

A fight ensued between Appellant and the victim. She tried to gain control of the hammer and Appellant stated to her, "If you don't turn loose of this goddamn hammer, I'm fixing to kill you." Appellant kicked the victim and she was hit several times with the hammer causing blood to flow onto the carpet and a mirror. It was at that time that the victim gave up the fight. During the attack she called Appellant by name and asked him why he was doing this to her. At some time during the melee, Appellant responded that he was attacking her because she had wrongfully accused him of "doing things" which he had not done. Apparently, the victim had previously communicated these allegations to Appellant's girlfriend. Appellant left the room and returned with a butcher's knife. He tied up the victim and then tied her to a doorknob with Venetian blind cord. Appellant then left the room and returned with two blue velvet jewelry bags. These items came from her briefcase. The Appellant left and the victim untied herself and called her son-in-law and the police.

During the course of her testimony, the victim identified two blue velvet jewelry bags as being her property. Contained in these bags were safety pins with blue beads that

she recognized as safety pins she had at her house. She also identified a Bulova Accutron ™ watch with the inscription, "PFP, on 6–8–67" and "Love, Fran." This was a watch she had given her husband for his birthday. She had kept this watch in her possession after he passed away.

Detective G.S. Holliday of the Houston Police Department testified that he arrested Appellant in Houston on December 22, 1992. Appellant requested that the arresting officers gather his property in his motel room. Holliday identified the two jewelry bags and the inscribed watch as items he found in Appellant's motel room.

Charles Homer Cranford, a thrice-convicted federal felon, testified that he met Appellant while both were incarcerated in the Midland County Jail. He spent several hours with Appellant in the same cell. During a lengthy conversation, Appellant offered to sell him some jewelry. Appellant described several pieces of jewelry but Cranford was only interested in buying some large diamonds. While Cranford could not remember the description given of the pieces of jewelry, he related that the jewelry being offered was expensive. Appellant stated that his girlfriend in Odessa would show the items to Cranford's wife. Appellant purported to call his girlfriend from the cell although Cranford only heard one end of the conversation.

Ed Krevit, a Midland County Sheriff's Officer testified that he and a Texas Ranger interviewed Cranford on December 31, 1992. He also related that he showed a photographic line-up to the victim on January 8, 1993.

The Appellant presented two witnesses in his defense. Susie Mae Foreman, a distant relative of Appellant, testified she resided in San Angelo, Texas. She stated that on the day of the offense Appellant was in San Angelo until approximately 5:30 p.m. During her cross-examination, she indicated she was unsure of the exact day he was there although she stated that she had made notes of the event.

Paul Vanzandt, Appellant's brother, stated that in the summer of 1992, he saw Appellant in possession of some blue jewelry bags similar to those taken from the Appellant's house. This occurred when their father had purchased the contents of a storage shed and blue jewelry bags were found in one of the boxes in the shed. The witness also testified that it was approximately 110 to 130 miles from Susie Foreman's house to the center of Midland, Texas.

## II. *DISCUSSION*

### A. Jury Argument

In Points of Error Nos. One, Two, and Three, Appellant asserts that counsel for the state violated Appellant's due process rights by utilizing improper jury argument in that he commented upon Appellant's courtroom demeanor and thereby commented upon Appellant's failure to testify. During trial, when first asked to identify Appellant in the courtroom, the victim could not do so. She related that the Appellant was a clean-cut individual who usually wore levis, cowboy shirt, and boots. After a break, the victim was again asked to identify her assailant. She asked Appellant to remove his glasses and stand up. When he stood, she then identified Appellant and stated that he did not usually wear glasses and that she had never seen him wearing glasses. She also stated that she had never seen him wearing a suit and tie and that he, "looks a little different." The victim testified that no one had suggested to her where to look in the courtroom in order to identify Appellant. Outside the presence of the jury, she related that she had not spoken to anyone other than the prosecutor at the break period.

During her re-direct examination, the victim stated the following concerning Appellant's appearance in the courtroom:

Yeah, I looked at him a couple of times. But he was sitting over there, and his mouth is covered up. He has got glasses pulled down over his nose. He is slumped down in the chair reading the paper like he is a lawyer. And there was a close resemblance there, but I thought he was the lawyer.

But when he pulls his glasses off and he stands up, and I can see his face, and he

gets his hand away from his face, I know who he is.

During closing argument at the guilt-innocence stage of trial, the following exchange occurred:

STATE: Of course, most of the testimony came from the victim, herself, Frances Parsons. And the obvious thing that I think probably jumped out at everybody as soon as it happened was her inability to point out the Defendant here in open Court the first time she was asked.

Of course, we have seen this picture. There is no dispute she knew the man. There is no dispute that they had been to dinner once at a birthday party of someone else. There is no dispute that he had been to her house from time to time, moving refrigerators, doing odd jobs and things like that, and he had seen her from time to time at the flea market where I suppose he helped his wife at the flea market.

The evidence was that this photograph here was taken ten days after the offense, photograph number three, when he was returned from Houston on the 30th. That's ten days after the offense. That's the way he looked when Fran Parsons knew him. You will have to ask yourselves, is that the way he looked in this courtroom? Is that the same look?

She told you that she had never seen him in a coat and tie before. She had never seen his glasses on.

We saw his mannerisms, especially while she was testifying, being just like the other two guys, yellow pad in hand, taking notes, his hand up covering his face from time to time.

You know, any defendant can figure out that if identity—

DEFENSE: Your Honor, I'm going to object to this. First of all, there is no testimony in front of the jury—and I hate to interrupt counsel. But I don't believe he is entitled to argue to the jury things that have not been testified to, and then reason from that what some other Defendant might do or any Defendant might do.

STATE: The jury is entitled to make their own observations throughout the trial, and I can comment on that.

THE COURT: You can comment on that. I will sustain it as to what some Defendant may think or do.

STATE: It doesn't take a rocket scientist to figure out that if identity is the issue, then changing your identity is a possible answer. It doesn't take a rocket scientist to figure that out.

Anybody that's watched TV, and watched any crime shows, sees that happen all the time.

If I were a gang member in Dallas, a black young man with dreadlock hair, et cetera, and I was guilty of a crime, I would know when I got to court, I would probably do better if I was nice and clean-cut. Simple as that.

Later, the prosecutor argued:

That still leaves the fact that they knew each other. That still leaves the fact that she knew him as the handyman, when he looked like this, and that when they walked in the courtroom here, with his little professional looking glasses down on his nose, and his coat and tie, scribbling like the other lawyers, she couldn't pick him out. Totally unrelated to the fact we are talking about a robbery. The fact is she didn't recognize the guy because his appearance has changed.

■■■ Proper jury argument falls into four specific categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument by opposing counsel, and (4) plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex. Crim.App.1973). If the prosecutor strays outside these four areas, the defendant must object until receiving an adverse ruling in order to preserve error. *Harris v. State,* 784 S.W.2d 5, 12 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). An exception to this contemporaneous objection requirement exists when the prosecutor's argument is so prejudicial that an instruction to disregard the argument could not cure the harm. *Id.* That is, jury argument error will not be waived for failure to object where the argu-

ment is manifestly improper, or violates some mandatory statute, or injects some new fact harmful to the defendant's case.[1] *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim. App.1982); *Walthall v. State*, 594 S.W.2d 74 (Tex.Crim.App.1980). In making the determination of whether a statement is manifestly improper, harmful, and prejudicial, courts are to look at the record as a whole. *Curtis v. State*, 640 S.W.2d 615, 618 n. 4 (Tex.Crim. App.1982); *Simpkins v. State*, 590 S.W.2d 129, 136 (Tex.Crim.App.1979).

■ It is clear, in the present case, that Appellant failed to pursue his objection to an adverse ruling and totally failed to object to the remainder of the complained-of argument. Further, to preserve error, the complaint on appeal must comport with the objection lodged at trial. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). At trial, Appellant objected that the argument was outside the record. He now asserts that the argument was a comment on Appellant's failure to testify. Accordingly, we must examine the record to determine if the argument was so prejudicial that an instruction to disregard could not have cured the harm. *Harris*, 784 S.W.2d at 12.

■ The State may not allude to a defendant's non-testimonial demeanor as being indicative of guilt absent any evidence in the record of such behavior. *Good v. State*, 723 S.W.2d 734, 738 (Tex.Crim.App.1986). Furthermore, an argument urging the jury to note the non-testimonial demeanor of a defendant as being indicative of lack of remorse or contrition can constitute a comment on the accused's failure to testify. *Dickinson v. State*, 685 S.W.2d 320, 324 (Tex.Crim.App. 1984). Appellant maintains that the State's argument implies that Appellant changed his appearance in order to foil the in-court identification. We note, however, that there is evidence in the record from the victim that Appellant's appearance was in fact changed and that he was acting like a "lawyer" at the defense table.[2] This is not a situation where the jury was called upon to find lack of

remorse or contrition from an accused's non-testimonial demeanor absent any evidence. While the prosecutor's comment concerning the proclivity of individuals charged with crimes to change their appearance to thwart identification was speculative and beyond the scope of the evidence at trial, we find that an instruction to disregard could have cured this excess.

■ Jury argument error is subject to a harm analysis under Tex.R.App.P. 81(b)(2). *Harris v. State*, 866 S.W.2d 316, 326 (Tex. Crim.App.1993). Accordingly, the reviewing court must assess whether the alleged error might possibly have prejudiced the jurors, and, in particular, whether the trial was fair. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989). In *Harris*, the Court of Criminal Appeals enumerated six factors which the reviewing court should examine: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) its probable impact on the jury; (5) its collateral implications; (6) and whether declaring the error harmless would encourage the State to repeat it with impunity.

In the present case, the source and nature of the error arise from the rather peculiar fact situation in this case. The victim testified regarding her initial inability to identify Appellant. The error involves an extrapolation upon her statements. While the State, on several occasions, mentioned the proclivity of individuals to change their appearance at trial, we fail to perceive how the statements had much additional impact over 'the unobjected-to statement of the victim. Given the rather limited overall application of this situation, we do not find that declaring the error harmless would encourage the State to repeat it with impunity. Points of Error Nos. One, Two, and Three are overruled.

### B. Relevance of Testimony of Offer to Sell Jewelry

■ In Point of Error No. Four, Appellant maintains that the court erred in admitting

---

1. This exception has been characterized as an argument that is clearly calculated to inflame the minds of jurors and is of such character as to suggest the impossibility of withdrawing the im-

pression produced on the jurors' minds. *Harris*, 784 S.W.2d at 12 n. 5.

2. There was no objection to this testimony.

the testimony of Charles Cranford because the testimony was too attenuated from the facts of the offense to be relevant. Appellant urges that Cranford's testimony revealed that he was unsure of when this discussion with Appellant occurred.[3] However, the robbery occurred on December 20, 1992. On December 22, 1992, Appellant was arrested in Houston with some of the victim's jewelry in his possession. Appellant was transported back to the Midland County Jail on December 30, 1992. On December 31, 1992, Deputy Krevit and a Texas Ranger interviewed Cranford. Appellant maintains that as there is no specific connection between the jewelry and diamonds offered to Cranford and the items taken from the victim, the evidence is irrelevant. Appellant's sole contention on appeal concerns relevance.

TEX.R.CRIM.EVID. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

■ Relevant evidence is any evidence which influences facts that have something to do with the ultimate determination of guilt or innocence in a given case. *Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Crim.App.1991). In determining relevancy, the appellate court looks at the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition to be proved. If there is a reasonable logical nexus, the evidence passes the relevancy test. *Fletcher v. State*, 852 S.W.2d 271, 271–77 (Tex.App.—Dallas 1993, pet. ref'd). In reviewing a trial court's determination that evidence is relevant, the ruling will be upheld absent an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex.Crim.App.1990) (op. on reh'g). An appellate court should hold that a trial court has abused its discretion only in those instances where the court can say with confidence that by no reasonable perception of common experience could the trial court have

concluded that the contested evidence had a tendency to make the existence of a fact or consequence more or less probable than it would have been without the evidence. *Id.*

In the present case, we find that the trial court did not abuse its discretion. Obviously, the evidence was offered by the State to demonstrate that Appellant had jewelry in his possession a relatively short time after the robbery. While this evidence is not as compelling as the evidence showing that Appellant had some of the stolen jewelry in his possession in Houston, we cannot say that the trial court erred in concluding that the evidence had a tendency to make the existence of a fact or consequence more probable than it would have been absent the evidence. Appellant's Point of Error No. Four is overruled.

## C. Tainted Identification

■ In Point of Error No. Five, Appellant argues that the pre-trial identification procedure was tainted. When the victim was questioned after the offense, she told Deputy Krevit the identity of her assailant and gave a description. Several days after the robbery, she gave a picture of Appellant taken at a birthday party to the investigators. On January 8, 1993, the victim was shown a photographic line-up and she identified Appellant. The picture used in the line-up was a booking photograph taken when Appellant was returned from Houston. We note initially that there was no objection lodged when the victim identified Appellant in court and testified regarding her identification. The sole objection came when the State offered the photographic line-up into evidence and after the deputy stated that she had identified Appellant from the photographic line-up.

■ Texas courts stringently apply the contemporaneous objection rule in the context of improper identification. Without an objection to an in-court identification or to testimony based on an impermissibly suggestive identification procedure, no error is preserved. *Perry v. State*, 703 S.W.2d 668, 670

---

**3.** During the voir dire examination, Cranford stated that he had been in the Midland jail on one occasion in December of 1992. He related

that at some time, he spoke with a Texas Ranger and another individual concerning the conversation.

(Tex.Crim.App.1986); *Ross v. State*, 861 S.W.2d 64, 67 (Tex.App.—Beaumont 1993, pet. ref'd). Accordingly, Point of Error No. Five is overruled.

### D. Bolstering

■ In Point of Error No. Six, Appellant contends that the court erred in allowing the investigating officer to testify that the victim identified Appellant in the photographic line-up. Appellant's complaint at trial and on appeal is that the act of Deputy Krevit in showing the line-up to the victim constituted bolstering. Bolstering is no longer a proper objection when a third person testifies to an out-of-court identification of an individual who testified at trial and is subject to cross-examination. *Poullard v. State*, 833 S.W.2d 273, 277–78 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Henderson v. State*, 816 S.W.2d 845, 849 (Tex.App.—Fort Worth 1991, no pet.); *Thomas v. State*, 811 S.W.2d 201, 208 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Accordingly, Appellant has waived his contention on appeal. Point of Error No. Six is overruled.

### E. Legal and Factual Sufficiency of the Evidence

#### 1. Legal Sufficiency

■ In Point of Error No. Seven, Appellant asserts that the evidence is legally and factually insufficient to support the conviction. In reviewing the legal sufficiency of the evidence to support a criminal conviction, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991); *Nevarez v. State*, 847 S.W.2d 637, 643 (Tex.App.—El Paso 1993, pet. ref'd). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim. App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor do we resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim.App.1991), *quoting Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ The application paragraph in the court's instruction to the jury at the guilt-innocence stage of trial read in relevant part:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, GARY GENE VANZANDT, [sic] on or about the 20th day of December, 1992 in the County of Midland and State of Texas, as alleged in the indictment, did then and there while in the course of committing theft and with the intent to obtain or maintain control of property of Frances Parsons, did then and there by using or exhibiting a deadly weapon, to-wit: a hammer, intentionally or knowingly cause bodily injury to said Frances Parsons by hitting her in the head with said hammer, . . . .

Viewing the evidence in the light most favorable to the verdict, the facts adduced at trial show Appellant assaulted the complainant with a hammer, bound her to a door and escaped with a large quantity of jewelry. She knew Appellant from prior dealings with him. Some stolen items were found in his possession when he was arrested in Houston. We find the evidence is legally sufficient to support the conviction.

#### 2. Factual Sufficiency

■ The Court of Criminal Appeals recently decided that a non-capital defendant has a right to appellate review of factual sufficiency of the elements of the offense. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App. January 31, 1996). In reviewing factual sufficiency, this Court considers all of the

evidence, but does not view it in the light most favorable to the verdict. *Clewis*, slip op. at 2 at 129. We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The Court of Criminal Appeals noted in *Clewis* that Texas courts have articulated the standard for factual sufficiency review in various ways. *Clewis*, slip op. at 11 at 134 n. 16. The standard stated in *Clewis*, and that generally followed by this Court, are, as applied, identical. *See id.* Accordingly, for purposes of a factual sufficiency review of a criminal conviction, we now adopt the factual sufficiency analysis which has historically been applied to civil cases.

▇▇▇▇▇ "Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. *Taylor v. State*, 921 S.W.2d 740 (Tex.App.—El Paso 1996, no pet. h.); *see also In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, the appellate court must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. If the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained. *Taylor*, slip op. at 7, at 746. In other words, if there is sufficient competent evidence of probative force to support the finding, a factual sufficiency challenge cannot succeed. *Id.* at 8, at 746; *see also Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). This is true even if the finding is supported by more than a scintilla of evidence and even though reasonable minds might differ as to the conclusions to be drawn from the evidence.

The realm of insufficient evidence exists in an area where there is some evidence of a fact in issue, sufficient that a jury question is warranted, but the evidence will not support a finding in favor of the proponent of that fact in issue. The parlance used by the courts of appeals is that such a finding "shocks the conscience" or that it is "manifestly unjust" limited by such phrases as "the jury's determination is usually regarded as conclusive when the evidence is conflicting," "we cannot substitute our conclusions for those of the jury," and "it is the province of the jury to pass on the weight or credibility of a witness's testimony." *Taylor*, No. 08–94–00260–CR, slip op. at 8, at 746; *see also e.g., Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex.1994); *Beall v. Ditmore*, 867 S.W.2d 791, 795 (Tex.App.—El Paso 1993, writ denied).

▇▇▇▇ In conducting a factual sufficiency review, this appellate court cannot substitute its conclusions for those of the jury. It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Taylor*, slip op. at 8, at 746; *see also Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (Tex.1951); *Reynolds v. Kessler*, 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Taylor*, No. 08–94–00260–CR, slip op. at 8, at 746; *see also Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820, 821 (Tex.1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied).

▇▇▇▇ In the present case, this Court has reviewed this case in light of the foregoing standards. While Appellant presented an alibi defense, we find that it cannot be determined that the jury's resolution of the case is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, Point of Error No. Seven is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.