NO. 12-01-00032-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


KENNETH LAMAR KEY,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW #1


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 Appellant Kenneth Lamar Key ("Appellant") was convicted by a jury of interference with
public duties. The trial court assessed punishment at 180 days in the Smith County Jail, probated,
and a $1,000 fine. In one issue, Appellant challenges the legal and factual sufficiency of the
evidence to support his conviction. We affirm.


Background


 Appellant was charged by information with interference with public duties by "refusing to
obey lawful orders and directives of Jeffrey Callaway," a Tyler police officer ("Officer Callaway"),
who "was performing a duty or exercising authority imposed or granted by law, to-wit: to preserve
the peace within the officer's jurisdiction pursuant to Texas Code of Criminal Procedure Art. 2.13." (1) 
Appellant pleaded "not guilty," and a jury trial was conducted. Appellant appeared pro se, but an
attorney was present at the trial and available to advise him. (2) 

 The State of Texas ("the State") called four Tyler police officers as witnesses. Officer
Callaway, a twelve-year veteran of the Tyler Police Department, testified that on April 13, 2000, he
was dispatched to a disturbance at 622 West Dobbs, Tyler, Smith County, Texas in response to a call
from Appellant. Three other officers also drove to the location in separate cars. When the officers
reached the location, they did not find a disturbance and were preparing to leave when Appellant
arrived, driving at what Officer Callaway considered "an unsafe speed." Appellant came to an
abrupt stop and exited his vehicle. All four officers walked toward Appellant, and Appellant walked
toward the house. 

 Officer Callaway testified that Appellant began to yell at a male and female, later identified
as a Mr. Lee ("Mr. Lee") and a Ms. Toliver ("Ms. Toliver"), who were outside the house (3) and that
Officer James Meredith ("Officer Meredith") asked Appellant how they could help him. Appellant
then yelled at Officer Meredith and told him he needed to do his job. As Officers Callaway and
Meredith moved closer, Appellant yelled at Mr. Lee and Ms. Toliver that they needed to get the dog
"out of here," which was a reference to a dog chained in the yard. He then told the officers they
needed to get Mr. Lee off the property. According to Officer Callaway, Appellant seemed agitated
and angry and his voice was elevated. Both officers attempted to calm Appellant in an effort to
investigate the reason for the disturbance call, but Appellant continued his aggressive tone and was
"belligerent" with "a very elevated volume in his voice."

 Officer Callaway stated that when Appellant first arrived, he was merely talking loudly, but
then Appellant began to "advance on him at a pretty good rate of speed for a walk." As Appellant
approached him, Officer Callaway put up his hand, and Appellant walked into it with his chest. At
that point, Appellant yelled "something to the effect of 'You can't touch me,'" and Officer Callaway
told Appellant to get back on the sidewalk. Officer Callaway concluded that Appellant was trying
to get to Mr. Lee and believed his instruction was necessary to prevent Appellant from assaulting
Mr. Lee and to preserve the safety of the officers.

 Officer Callaway continued his attempts to calm Appellant, but Appellant's agitation did not
subside, and he moved off the sidewalk and headed toward Mr. Lee. When Officer Callaway
stepped toward him, Appellant quickly moved back onto the sidewalk. Appellant continued yelling
and moved off the sidewalk five additional times in an attempt to reach Mr. Lee, despite Officer
Callaway's attempts to calm him and his instructions that Appellant remain on the sidewalk. After
the sixth time Appellant stepped off the sidewalk in violation of Officer Callaway's instructions,
Officer Callaway and Officer Darrell Gardner ("Officer Gardner") handcuffed Appellant and placed
him under arrest.

 Officer William A. Horton ("Officer Horton"), a nineteen-year officer with the Tyler Police
Department, was also dispatched to the Dobbs address and confirmed Officer Callaway's description
of the incident. Officer Horton testified that he attempted to speak to Appellant, who appeared angry
and belligerent, but Appellant refused to answer questions. He also stated that Appellant would
"come real close and get right up in my face and I would have to back off from him because I feared
for my safety." In Officer Horton's opinion, Appellant was acting in a threatening manner and was
trying to get by the officers to reach Mr. Lee and Ms. Toliver. He considered Appellant's behavior
sufficient reason to believe that Appellant could create a problem with either an assault or a possible
assault. Although Officer Horton went into the house to speak with Mr. Lee and Ms. Toliver, he was
looking outside when Appellant walked into Officer Callaway's arm. He could also hear Appellant
and recalled that he was still very belligerent and loud and was "flailing his arms around." He did
not see any of the other instances described by Officer Callaway in which Appellant moved off the
sidewalk and moved toward Mr. Lee.

 Officer Gardner, who had been with the Tyler Police Department four years, was also
dispatched in response to Appellant's disturbance call and gave a similar account of the incident. 
He stated that the officers did not initially arrest Appellant because they were trying to give him the
opportunity to calm down, which would have allowed them to find out why they were called and
possibly work out the problem without a disturbance. Officer Gardner was outside with Officer
Callaway and Appellant during the entire incident and stated that each time Appellant moved off the
sidewalk, he was also pointing at Mr. Lee and yelling at him. After Appellant moved off the
sidewalk for at least the sixth time, Officers Gardner and Callaway knew they were going to have
to stop him, and they placed him under arrest. 

 Officer Meredith, who was the fourth officer present during the incident, had been with the
Tyler Police Department for twenty-two years. He described Appellant as "doing a lot of yelling and
flailing" and observed that Appellant would not answer any questions and continued to yell. He
stated that they finally learned Appellant owned the residence as rental property and that the problem
had to do with the house. Officer Meredith accompanied Officer Horton when he went in to discuss
the incident with Mr. Lee and Ms. Toliver. When he came back outside, Appellant had been arrested
and was sitting in the back of the patrol car. While he was in the house, he could not see what
occurred between Appellant and the officers who remained outside.

 Appellant did not testify, but called six witnesses in his defense. Four of those witnesses
were the officers who testified for the State, and their testimony regarding the details of the incident
did not vary from the testimony they gave on direct examination by the State. Clifton Roberson, a
Tyler attorney, testified about events that occurred subsequent to the incident in question. Timothy
Carr Hamlin ("Hamlin"), who was a friend of Mr. Lee, testified that he was at the scene of the
incident and was standing outside talking to Mr. Lee when the police arrived. He stated that he did
not feel threatened by Appellant and did not see any of the events described by the officers. He
recalled that Appellant was upset and acted "kind of excited," but he did not remember hearing
Appellant say he wanted to beat up Mr. Lee or seeing him try to do so. 

 The jury found Appellant guilty, and the trial court assessed punishment at 180 days in the
Smith County Jail, probated, and a $1,000 fine. Appellant gave timely notice of appeal.


Sufficiency of the Evidence


 In his sole issue, Appellant contends that the evidence presented by the State is both legally

and factually insufficient to support the jury's verdict. Specifically, Appellant contends that his
conduct during the incident in question consisted of speech only, which is a defense to prosecution
under section 38.15. (4)

Legal Sufficiency

 Where a party seeks reversal of a conviction on grounds of both legal and factual
insufficiency, an appellate court must first determine whether the evidence adduced at trial was
legally sufficient to support the verdict. See Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App.
1996). Our determination of sufficiency of the evidence requires that we review all evidence, both
admissible and inadmissible. Gardner v. State, 699 S.W.2d 831, 835 (Tex. Crim. App. 1985). The
standard of review that a court must follow in making a determination of legal sufficiency requires
that it ask whether, after reviewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). While
conducting this review, a court does not reevaluate the weight and credibility of the evidence, but
merely ensures that the jury reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex.
Crim. App. 1993).

 In the case at hand, Appellant was charged with interference with public duties for "refusing
to obey lawful orders and directives of Jeffrey Callaway," a Tyler police officer who "was
performing a duty or exercising authority imposed or granted by law, to-wit: to preserve the peace
within the officer's jurisdiction pursuant to Texas Code of Criminal Procedure Art. 2.13." Officer
Callaway testified that Appellant, upon his arrival at the scene, immediately began yelling at Mr. Lee
and Ms. Toliver, who were outside the house. He also testified that Appellant seemed agitated and
angry and his voice was elevated. He further stated that he and Officer Meredith attempted to calm
Appellant in an effort to investigate the reason for the disturbance call. 

 After noting Appellant's apparent anger at Mr. Lee, Officer Callaway instructed Appellant
to stay on the sidewalk, which he believed was necessary to prevent Appellant from assaulting Mr.
Lee and to preserve the safety of the officers. After Officer Callaway told Appellant to stay on the
sidewalk, Appellant stepped off the sidewalk and headed in Mr. Lee's direction six times. Each
time, Officer Callaway stopped Appellant and directed him to get back on the sidewalk. Officer
Gardner confirmed Officer Callaway's testimony that Appellant continued to step off the sidewalk
and move toward Mr. Lee despite Officer Callaway's instructions. Thus, based on our review of the
record, we conclude Appellant engaged in conduct other than speech in refusing to obey the
directives of Officer Callaway. Consequently, we hold that the evidence is legally sufficient to
support Appellant's conviction of interference with public duties.

Factual Sufficiency

 After a court of appeals has determined that the evidence is legally sufficient to support the
verdict, it must proceed to review all the evidence in a claim of factual insufficiency. Clewis, 922
S.W.2d at 133. In conducting a factual sufficiency review, the appellate court must view all of the
evidence impartially and set aside the verdict only if it is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Id. at 135; Bilby v. State, 892 S.W.2d 864, 875 (Tex.
Crim. App. 1994). However, this court must not substitute its judgment for that of the jury. It is not
the role of an appellate court to interfere with the jury in resolving conflicts in the evidence or
determining the weight and credibility to be accorded varying witnesses' testimony. Van Zandt v.
State, 932 S.W.2d 88, 96 (Tex. App.--El Paso 1996, pet. ref'd).

 In the instant case, Officer Meredith testified on direct examination by the State that he was
in the house with Officer Horton and did not see what occurred between Appellant and the officers
who remained outside. Appellant did not testify, but called six witnesses for his defense. Four of
the witnesses were the officers who were present during the incident in question. Officer Horton
testified that he did not see the instances in which Appellant stepped off the sidewalk in violation
of Officer Callaway's instructions because he was in the house. 

 Hamlin testified that he was at the scene of the incident and was outside talking to Mr. Lee. 
He stated that he did not feel threatened by Appellant. He further stated that he did not hear any of
Appellant's conversations with the officers or see any of the events the officers described in their
testimony, but he recalled that Appellant was upset and acted "kind of excited." Hamlin also did not
remember hearing Appellant say he wanted to beat up Mr. Lee or seeing him try to do so. 

 Our review of the testimony of all the evidence indicates that Hamlin's is the only testimony
that can be considered to contradict the testimony presented by the State. Even considering Hamlin's
testimony, however, we are mindful that our evaluation should not substantially intrude upon the
jury's role as the sole judge of the weight and credibility of witness testimony, Santellan, 939
S.W.2d at 164, and note that where there is conflicting evidence, the jury's verdict on such matters
is generally regarded as conclusive. VanZandt, 932 S.W.2d at 96. Our review of the record as a
whole does not cause us to conclude the jury's verdict is so contrary to the great weight of the
evidence presented at trial as to be clearly wrong and unjust. Therefore, we hold that the evidence
is factually sufficient to support Appellant's conviction of interference with public duties. 
Appellant's sole issue is overruled.

 The judgment of the trial court is affirmed.




 JIM WORTHEN 

 Justice



Opinion delivered May 8, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.




















(PUBLISH)
1. Article 38.15 of the Texas Penal Code defines interference with public duties as follows:

 

 (a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes,
or otherwise interferes with:


 (1) a peace officer while the peace officer is performing a duty or exercising
authority imposed or granted by law;


 . . . .


 (b) An offense under this section is a Class B misdemeanor.


 . . . .


Tex. Pen. Code Ann. § 38.15 (a)(1), (b) (Vernon Supp. 2002).
2. Appellant is represented by counsel on appeal.
3. The female was later determined to be Appellant's tenant, and Mr. Lee was her boyfriend.
4. "It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference
alleged consisted of speech only." Tex. Pen. Code Ann. § 38.15(d) (Vernon Supp. 2002). The statutory language
creating the defense was included in the jury charge.