NO. 12-02-00308-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


ROGER DALE GUESS,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Roger Dale Guess ("Appellant") was convicted of assault causing bodily injury to a family
member and was sentenced to 100 days of confinement in the Smith County Jail and fined
$2,000.00. On appeal, Appellant challenges the legal and factual sufficiency of the evidence to
support his conviction. We affirm.


Background

 On April 23, 2003, Appellant was charged by information with "intentionally, knowingly,
and recklessly caus[ing] bodily injury to ZACHERITH GUESS, a family member, by hitting
ZACERITH GUESS with his hands." Appellant pleaded "not guilty" to the charge, and his case
went to trial on October 1. After the trial ended, the jury found Appellant guilty of the assault
charge, sentenced him to 100 days of confinement, and assessed a $2,000.00 fine. On appeal,
Appellant contends that the evidence to support his conviction is legally and factually insufficient
because there is no evidence that Zacherith Guess suffered any bodily injury. 




Sufficiency of the Evidence

Standard of Review

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.-San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury's verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).

 In considering factual sufficiency, we must first assume that the evidence is legally sufficient
under the Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We
then consider all of the evidence in the record related to Appellant's sufficiency challenge, not just
the evidence which supports the verdict. We review the evidence weighed by the jury which tends

to prove the existence of the elemental fact in dispute and compare it to the evidence which tends
to disprove that fact. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We are
authorized to disagree with the jury's determination, even if probative evidence exists which
supports the verdict. Clewis, 922 S.W.2d at 133. However, factual sufficiency review must be
appropriately deferential so as to avoid the appellate court's substituting its own judgment for that
of the fact finder. Our evaluation should not substantially intrude upon the jury's role as the sole
judge of the weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where
there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive.
See VanZandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, pet. ref'd). Ultimately, we
must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates
that the proof of guilt is so obviously weak as to undermine our confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We will set aside a
verdict "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and
manifestly unjust." Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002).

Applicable Law

 A person commits the offense of assault if he (1) intentionally, knowingly, or recklessly
causes bodily injury to another, (2) intentionally or knowingly threatens another with imminent
bodily injury, or (3) intentionally or knowingly causes physical contact with another when the person
knows or should reasonably believe that the other will regard the contact as offensive or provocative. 
Tex. Pen. Code Ann. § 22.01(a) (Vernon 2003). A "family" member "includes individuals related
by consanguinity or affinity, . . . [and] individuals who are the parents of the same child." Tex. Fam.
Code Ann. § 71.003 (Vernon 2002). "Bodily injury" is defined as "physical pain, illness, or any
impairment of physical condition." Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon 2003).

The Evidence

 At trial, Tina Wilson ("Wilson"), the assistant manager at Paco's Too restaurant in Tyler,
testified that at around 9:00 p.m. on the evening of March 8, she was in her office when she heard
someone yell, "There's a fight going on outside." When Wilson left her office and went outside to
find out what was happening, she observed one of the persons involved in the fight enter the
passenger side of a truck. The other person involved in the fight was exchanging words with another
employee of Paco's Too. The person who was talking to the employee then entered the truck and
the two persons left the premises. After about ten minutes, Wilson was looking out of a window at
the restaurant and noticed that the truck with the two men was in the turn lane to re-enter the parking
lot in front of Paco's Too. However, the truck never turned into the parking lot because "the fight
ensued." Wilson observed "a person standing at the driver's side of the truck just swinging,
erratically swinging." She did not know if that person was making contact with anything or anyone,
but she "[knew] that he was swinging at somebody inside" because "it was that obvious." Wilson
could not see the person inside the truck because the person standing at the driver's side of the truck
was blocking her view of the interior of the truck. Police officers from the Tyler Police Department
then arrived at the scene of the fight, responding to a call placed by Cathy Pulido, the manager of
Paco's Too.

 On cross-examination, Wilson stated that after she saw the truck approach the parking lot of
the restaurant, she locked the door of the restaurant and continued to watch the truck through the
restaurant's glass doors. She also admitted that while the truck was in the turn lane to turn into the
parking lot, she did not know what was happening inside the truck. Wilson further testified that she
did not know whether the person swinging his arms was "slapping when he was doing that, but he
was still hitting." 

 William Blalock ("Blalock"), an employee of Paco's Too, told the jury that on the evening
of March 8, he saw a truck pull into the parking lot and "a couple of guys [got] out and start[ed]
fighting in the parking lot." He stated that it looked to him like both people were "kind of wrestling
around at first," but then "there was some punching involved." After Blalock saw the altercation,
he went outside to tell the two persons to leave the premises. Then one of the men started "coming
towards [him] like he was going to fight [him]", so Blalock went back inside the restaurant. Blalock
watched the two men get back in the truck and leave, but then later noticed that the truck had stopped
in the middle of the road. Blalock went back outside the restaurant and began to watch the truck,
but he could not see anyone around the truck. Blalock also stated that he could not recognize either
of the individuals. 

 On cross, Blalock testified that he was never closer than thirty feet from the two individuals
when he first went outside to tell them to leave the premises. He also stated that he never saw any
persons around the truck when the police arrived. On redirect examination, Blalock said that to the
best of his knowledge, the same white truck had been occupied by the individuals involved in the
altercation and was also parked in the turn lane in front of the restaurant after those individuals left
the premises. 

 Zacherith Guess ("Guess") testified that Appellant was his father and that both he and
Appellant had been shooting pool and drinking beer at Clicks, a pool hall and bar in Tyler, on the
evening of March 8. The two men left Clicks, with Appellant driving the truck. As they were
traveling, they began to argue because Guess wanted to drive the truck and get something to eat,
while Appellant did not. Appellant pulled the truck into the parking lot of Paco's Too and the two
men exited the truck because they "decided to have a little bit of a physical confrontation." After
Guess and Appellant got out of the truck, Guess stated that he shoved Appellant, but "[i]t didn't go
any further than that." He also said that someone came out of a building and told them to leave the
premises immediately. Guess testified that they both got back in the truck, with Appellant driving,
and started to go home. Guess stated that they pulled out of the parking lot and stopped in the turn
lane because he believed that they "were going to get out and try to do the physical confrontation
again, because the man told us to leave the parking lot." Guess shoved Appellant again and got out
of the passenger seat of the truck, walked around to the driver's side of the truck, and shoved
Appellant again. Appellant then "flung [Guess] to the side of the truck, and the cops showed up." 
Guess stated that Appellant did not do anything to him before he pushed Appellant, except for "[a]
lot of screaming and yelling." Guess testified that after he pushed Appellant while they were out of
the truck, Appellant "flung [Guess] to the side of the truck to get [him] off of him." 

 After the police arrived, Guess sat in the back of a police car while the police placed
Appellant under arrest. Guess himself was also arrested for public intoxication, but he did not think
that his memory or perception of the events that had taken place that night was impaired because he
was drunk. 

 On cross-examination, Guess testified that he did not suffer any physical injury or pain as a
result of the altercation. Appellant also offered pictures taken of himself and Guess the morning
after the incident.

 Harold Snyder ("Snyder"), a patrol officer for the Tyler Police Department, testified that he
responded to a call that a fight was occurring in the parking lot of the Paco's Too restaurant. 
Although Snyder could not locate the disturbance in the parking lot, employees at the restaurant
came outside and pointed to the truck in the middle of the road in front of the restaurant. As Snyder
traveled toward the truck, he observed two white males. One person was sitting inside the truck on
the driver's side with his feet hanging out, and the other person was standing in front of the seated 
person, "hitting him with both fists." The standing person was hitting the person in the truck with
a "two-handed, real rapid-fire double-fisted thing," but Snyder could not tell if the person sitting in
the truck was trying to get up. He also testified that he did not see the person in the truck swing
back. When Snyder arrived at the truck, he stated that Appellant turned around and was approached
by Officer Matthews. Snyder went and checked on the person seated inside the truck to see if he had
suffered any major injuries. Snyder also identified Appellant as the person he saw swinging his fists
and striking Guess, the person seated in the truck. Snyder stated that Appellant was upset and was
intoxicated to a point where he was a danger to himself and others. He also believed that Guess was
intoxicated to the same degree. 

 When Snyder checked Guess for injuries, he observed a "red abrasion under his left eye, a
red abrasion on his right eyelid, and he had some red marks around his neck." After the two officers
spoke with Appellant and Guess, both men were arrested; Appellant for "assault family violence"
and Guess for public intoxication. Snyder also testified that he never saw Guess attempting to attack
or threaten Appellant and that Guess was not fighting back. In his opinion, Snyder believed that
when one person hits another person with a fist, that action can cause bodily injury.

 On cross-examination, Snyder stated that he did not know what went on between the two
men prior to the time that he arrived at the scene of the altercation and that he did not know if Guess
had initiated the fight between the two men. 

 The State rested and Appellant moved for directed verdict, which the trial court overruled. 
Appellant began his case-in-chief by calling Guess, who testified that as a result of the incident on
March 8, he did not suffer any abrasion on his neck or around his eye. 

 On cross-examination, Guess stated that although he was intoxicated, he believed he was able
to remember everything that had happened the evening of March 8. He also told the jury that
Appellant did not make any physical contact with him while the truck was parked in the middle of
the road. 

Analysis

 Appellant contends that there is no evidence that Guess suffered any bodily injury as a result
of any action taken by Appellant. At trial, Snyder testified that he saw Appellant hitting Guess with
both fists" in a "two-handed, real rapid-fire double-fisted" manner. Snyder also stated that Guess
had suffered a "red abrasion under his left eye, a red abrasion on his right eyelid, and he had some
red marks around his neck." Although these symptoms may not prove serious bodily injury, the
definition of bodily injury "is purposefully broad and seems to encompass even relatively minor
physical contacts so long as they constitute more than mere offensive touching." Salley v. State, 25
S.W.3d 878, 881 (Tex. App.-Houston [14th Dist.] 2000, no pet.). When viewing this evidence in
the light most favorable to the verdict, a rational trier of fact could have found that Appellant, while
striking Guess with both fists, caused Guess to suffer bodily injury. 

 With regard to factual sufficiency, Guess's testimony was that Appellant never hit him with
his fists and that he never suffered any bodily injury. We note that, as the exclusive judges of the
facts, the credibility of the witnesses, and the weight to be given their testimony, the jury may believe
or disbelieve all or any part of a witness's testimony. Penagraph v. State, 623 S.W.2d 341, 343
(Tex. Crim. App. 1981) ("A jury is entitled to accept one version of the facts and reject another or
reject any of a witness's testimony."). Where there is conflicting evidence, the jury's verdict on such
matters is generally regarded as conclusive. See VanZandt 932 S.W.2d at 96. Therefore, the jury
was free to believe either Snyder's or Guess's version of the facts. The jury chose to believe 
Snyder's account of what he saw, and what he witnessed shows that Appellant assaulted Guess with
his fists and caused him to suffer bodily injury. Therefore, the evidence supporting guilt is not so
obviously weak, nor does the contrary evidence so clearly outweigh the supporting evidence as to
render Appellant's conviction clearly wrong and manifestly unjust.

 Appellant's issues are overruled.


Conclusion

 Based upon our review of the record, we hold that the evidence is legally and factually
sufficient to support the jury's verdict of guilt. Accordingly, the judgment of the trial court is
affirmed.


 DIANE DEVASTO 

 Justice



Opinion delivered August 29, 2003.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.





(DO NOT PUBLISH)