# NO. 12-07-00485-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JERRY W. SASH,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jerry W. Sash appeals his conviction for aggravated sexual assault of a child. In his sole issue, Appellant argues that the evidence was factually insufficient to support his conviction. We affirm.

### Background

Appellant was charged by indictment with aggravated sexual assault of a child, a first degree felony.[1] The indictment contained two felony enhancement paragraphs. At a bench trial, the child complainant, C.P., testified that he was ten years old. He stated that on the date of the offense, he left school at approximately 3:00 p.m. and rode the bus home with his two of his friends, J.B.1 and J.B.2, who were brothers.[2] Then, he went to his grandmother's apartment to put up his books and backpack. Shortly thereafter, he met the same two friends at the playground, and they began playing "tag." C.P. testified that a man, whom he identified as Appellant, came to the playground and leaned on the

---

[1] *See* TEX. PENAL CODE ANN. § 22.021 (a)(1)(B)(iii), (2)(B), (e) (Vernon Supp. 2008).

[2] The brothers have identical initials. J.B.1 was ten years old and J.B.2 was six at the time of trial.

fence. C.P. said that Appellant told J.B.1 and J.B.2 to leave and they did so. He admitted that after his friends left, he asked Appellant if he could have some money to buy a video game. Appellant told C.P. that he would get it another day because he did not have change for twenty dollars. Appellant then told C.P. to "come to my house," but did not give C.P. a reason.

A few minutes after entering Appellant's apartment, Appellant told C.P. to sit on the couch and to take his pants down. C.P. complied because he was afraid and believed Appellant was going to hurt him. C.P. stated that Appellant "sucked my private part." C.P. told Appellant he had to go to the restroom, but instead ran to his grandmother's house, crying. He explained that he told Appellant he had to go to the restroom so that he could get out of the apartment. C.P. testified that the couch in Appellant's house was tan with green on it and that he had a coffee table and a kitchen table. He also stated that Appellant's house "smelled good" from "smell sticks."

C.P. said that after he arrived at his grandmother's house, he went into the bathroom and washed himself, because he did not want Appellant's germs on him. Afterward, he went into his grandmother's closet in the bathroom because he was upset. When C.P.'s grandmother checked on him, he told her what had happened. C.P. also stated that he told the police and a nurse at the hospital about the incident. He stated further that he washed himself again at the hospital.

C.P. showed the police where the incident occurred, but could not remember what kind of clothing Appellant was wearing. He stated that the police showed him a "photo line up" and that he circled one of the photographs. C.P. said that he had seen Appellant about four times before this incident. At those times, Appellant was in his front or back yard and C.P. once observed Appellant sitting in a green chair on his porch. He admitted that one time he got off the school bus and noticed Appellant standing in his front yard. Appellant told C.P. that he "look[ed] like a good kid."

After the trial concluded, Appellant was found guilty as charged in the indictment. The trial court assessed his punishment at life imprisonment.[3] This appeal followed.

---

[3] If it is shown on the trial of a felony offense other than a state jail felony that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment for life, or for any term of not more than ninety-nine years or less than twenty-five years. TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2008).

In his sole issue, Appellant argues that the evidence was factually insufficient to support his conviction.

**Standard of Review**

In conducting a factual sufficiency review of the evidence supporting the jury's verdict, we consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002) (a verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust"); *see Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

Although we are authorized to disagree with the factfinder's determination, even if probative evidence exists that supports the verdict, *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Where there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). We cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the fact finder's resolution of the conflict. *See Watson*, 204 S.W.3d at 417.

Further, in order to evaluate factual sufficiency, we should measure elements of the offense as defined in a hypothetically correct jury charge for the case. *Grotti v. State*, 273 S.W.3d 273, 280-

81 (Tex. Crim. App. 2008). This charge accurately promulgates the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

## Applicable Law

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, and the victim is younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021 (a)(1)(B)(iii), (2)(B) (Vernon Supp. 2008). A conviction under section 22.021 of the Texas Penal Code is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005). However, the requirement that the victim inform another person of an alleged offense does not apply if, at the time of the alleged offense, the victim was a person seventeen years of age or younger. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1) (Vernon 2005).

## Analysis

Appellant argues that the evidence was factually insufficient to support his conviction because C.P.'s testimony was "riddled with inconsistencies" and "lacked any semblance of credibility." Specifically, Appellant points out that C.P. erred in describing the interior of Appellant's apartment and did not explain why he went into Appellant's apartment. He also asserts that C.P.'s testimony lacked physical or testimonial support or corroboration, and that C.P.'s testimony contradicted his friends' testimony. However, the uncorroborated testimony of a child sexual assault victim is sufficient to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a). Further, our review of the factual sufficiency of the evidence must not substantially intrude upon the fact finder's role as the principal judge of the weight and credibility of witness testimony. *See Santellan*, 939 S.W.2d at 164. And where there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *See Van Zandt*, 932 S.W.2d at 96.

Here, there were some variations between C.P.'s testimony at trial and his initial account to the police. In describing Appellant's apartment, C.P. stated that he could not remember telling the police that he saw green lawn chairs on Appellant's porch on the day of the incident. According to

4

Kerri Long, a detective with the Tyler Police Department, C.P. told her there was a green lawn chair on Appellant's porch. However, she did not find any such chairs on Appellant's porch. C.P. testified that in Appellant's living room there were two tan couches with "green on it," a coffee table with a glass top and a flowerpot in front of the couches, and a wood, tan, and gold kitchen table. He did not recall telling the police that the couch was white with gold and green stripes. However, C.P. remembered that he stated the couch had flowers and green, but not white. He also admitted that he may be "getting gold and tan mixed up with each other." According to Long, C.P. stated that the couch was gold with either green stripes or green flowers. Donald Rutledge, an officer with the Tyler Police Department, testified that C.P. told him the couch was white with gold and green stripes. Long stated that Appellant's couch was tan and had "green marks on the pillow." She also stated that the couch could have been gold to another person.

C.P. could not recall telling the police that the kitchen table was glass. Gayle Burress, a marriage and family therapist and forensics expert, testified that C.P. said the coffee table had a glass top, but that the police officers noted it was wood. While he was in the apartment, C.P. noticed a "good scent." He stated that Appellant had "long brown things" that he burned. Long and Rutledge testified that they observed candles in Appellant's apartment. C.P. also testified that when he told the police where the incident occurred, he mistakenly said the apartment number was 1702, not 1802.

C.P. testified that his grandmother told him to "go wipe myself" before calling the police. He stated that he got a pink towel from the bathroom, cleaned himself, and put the towel in the dirty clothes area. When his mother arrived, she told him to put on new underwear and put his underwear in the dirty clothes area. Jessie Smith, C.P.'s grandmother, stated that she never suggested that C.P. change his underwear or clean himself up. She remembered having a pink towel, but never found it. Kimberly Mack, a biological screener with the Texas Department of Public Safety Crime Lab, testified that she conducted presumptive testing of C.P.'s underwear searching for semen, but did not find any. However, she did not test C.P.'s underwear for saliva.

C.P. testified that Appellant told J.B.1 and J.B.2 to leave the playground. J.B.1 testified that he and J.B.2 met C.P. at the playground on the day of the occurrence. He stated that after about thirty minutes, he went home and left C.P. on the playground. He recalled that C.P. was talking to someone, but did not look to see who it was. He did not recall anyone telling him to leave the

playground that day. J.B.2 testified that on the day of the incident, he and his brother met C.P. on the playground. J.B.2 remembered seeing C.P. talking to a big black man that day. He stated that the man was in the backyard on his porch. However, J.B.2 told the police that he did not see any man at the playground that day. Rutledge stated that neither J.B.1 or J.B.2 recalled any male adult on the playground or near any of the children playing there.

C.P.'s description of the couches, candles, and tables in Appellant's apartment was somewhat inconsistent, and no physical evidence supported the assault. Further, C.P.'s belief that Appellant asked his friends to leave the playground was contrary to their testimony. We are not persuaded, however, that C.P.'s testimony should be disregarded or that a manifest injustice has occurred. In fact, C.P. gave a near contemporaneous account of the assault to his grandmother, police, and the hospital nurse. He was also able to identify Appellant from a "photo line up" and show police where the assault occurred. Our review of the record as a whole, with consideration given to all of the evidence, both for and against the finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. *See* **Ortiz**, 93 S.W.3d at 87; **Johnson**, 23 S.W.3d at 11; **Jones**, 944 S.W.2d at 648. Consequently, the evidence is factually sufficient for the fact finder to find Appellant guilty of aggravated sexual assault as charged in the indictment. Accordingly, Appellant's sole issue is overruled.

## DISPOSITION

The judgment of the trial court is ***affirmed***.

SAM GRIFFITH
Justice

Opinion delivered February 25, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)