NO. 12-01-00379-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


TIMOTHY DEAN CARMACK,
§
 APPEAL FROM THE 188TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 GREGG COUNTY, TEXAS

 

 Timothy Dean Carmack ("Appellant") appeals his conviction for murder, for which he was
sentenced to imprisonment for life and fined five thousand dollars. Appellant raises four issues on
appeal. We affirm.

 

Background

 On December 17, 2000, Appellant and his two-and-a-half year-old son, Dusty, were left alone
together in a small apartment after Appellant's girlfriend left for work at 3:00 p.m. At approximately
4:30 p.m., Appellant contacted 9-1-1 and advised them that his son had fallen in the bathtub and was
unconscious. In fact, there was no bathtub in the apartment, but rather a small shower stall. 
Subsequently, emergency personnel arrived and transported Dusty to the hospital where he later died. 
 Appellant was indicted for intentionally or knowingly causing the death of Dusty Carmack,
an individual younger than six years of age, by means unknown. (1) Appellant pleaded "not guilty" and
the matter proceeded to trial. 

 Ben Harrison ("Harrison"), a paramedic with the Longview Fire Department, testified that
following the incident, Appellant stated that Dusty had fallen in the bathtub and had become
unconscious after the fall. (2) Harrison further testified that en route to the hospital, he noted that Dusty
had two black eyes, which was indicative of a closed head injury, and that he had multiple bruises
about his body. 

 Dr. Joni McClain ("Dr. McClain"), a Dallas County Medical Examiner, testified regarding
the autopsy she performed on Dusty. Dr. McClain testified as to Dusty's external injuries noted
during the autopsy, such as bruises on his left upper arm, thigh, lower leg, face, (3) and the sides and
back of his head, and abrasions on his right leg, abdomen, forearm and upper shoulder. Dr. McClain
testified that during the autopsy, it was also determined that Dusty had retinal hemorrhaging as well
as hemorrhaging in the back of the head and in the forehead, subdural hemorrhaging on the right side
of the brain and bruising and hemorrhaging in his abdomen. Dr. McClain testified that the bruises
on Dusty's forehead and abdomen were the result of blunt force trauma. (4) Dr. McClain categorized
the force necessary to produce the injuries Dusty sustained as that which might result from an
automobile accident. The blunt force trauma to Dusty's head, Dr. McClain concluded, was the cause
of Dusty's death. Dr. McClain also noted that Dusty could not have received a fatal head injury from
a simple fall.

 Dr. Theodore Slade ("Dr. Slade"), the neurosurgeon who treated Dusty, also testified as to
Dusty's injuries as he observed them. Dr. Slade testified that while it was "perhaps possible" that
Dusty's injuries resulted from falling in the shower, such an event was "unlikely" the cause of his
injuries. Dr. Slade also testified that it was possible that one of the bruises on the left side of Dusty's
forehead could have resulted from a surgical procedure performed on Dusty.

 Dr. Ronald Uscinski ("Dr. Uscinski"), a neurosurgeon, testified on Appellant's behalf. Dr.
Uscinski testified that he reviewed all of Dusty's medical reports, laboratory reports, X-rays and
autopsy. He recounted medical research he had reviewed regarding head injuries to children and
provided alternate medical explanations for Dusty's injuries. Dr. Uscinski ultimately testified that
it was his opinion that Dusty suffered injury to the brain when he fell in the shower and hit the back
of his head, had a seizure, and stopped breathing. 

 Jessie Lynn Nealy ("Nealy"), Appellant's live-in girlfriend, testified that Dusty had no
bruises, aside from a few contusions on his thigh and knee, prior to her leaving for work on the day
in question. Nealy further testified that Appellant had been frustrated by the fact that Dusty was not
yet potty trained. According to Nealy, who always bathed Dusty, she had never seen Dusty fall while
taking a shower. Nealy also noted that the shower was not slippery and was functioning properly
when she had used it earlier that day. Moreover, Nealy stated that it was unusual that Dusty would
have been given another shower since she had bathed him around 11:30 p.m. the night before and
Dusty would not have needed another shower unless he and Appellant were going to go somewhere,
which Nealy felt was unlikely since she had taken the car. 

 Appellant moved for an instructed verdict both when the State of Texas (the "State")
concluded its case-in-chief and at the close of evidence. Appellant's motions for instructed verdict
were each denied and the matter proceeded to jury argument. During the prosecutor's argument, the
following transpired:


 [PROSECUTOR]: He didn't fall in the shower. This didn't
happen in the shower. It happened in the
living room. It happened in the kitchen. I
wish I could tell you exactly where, but only
two people know, Dusty and the defendant,
and we have -

 

 [APPELLANT'S Your Honor, I object. Can we approach the

 COUNSEL]: bench. 

 (Off-the-record discussion)


 THE COURT: State your objection counselor if any.


 [APPELLANT'S I did, Your Honor.

 COUNSEL]:


 THE COURT: Overruled.

 


Ultimately, the jury found Appellant guilty of the lesser-included offense of murder, sentenced
Appellant to imprisonment for life and fined Appellant five thousand dollars.


Evidentiary Sufficiency

 In his first and second issues, Appellant contends that the evidence is both legally and
factually insufficient to support the jury's verdict. In his third issue, Appellant contends that the trial
court erred in failing to grant his motion for an instructed verdict because the evidence was
insufficient as a matter of law to prove that the allegations against him beyond a reasonable doubt. (5)

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.-San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury's verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).

 On the other hand, in considering factual sufficiency, an appellate court must first assume
that the evidence is legally sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996). The appellate court then considers all of the evidence in the
record related to Appellant's sufficiency challenge, not just the evidence which supports the verdict. 
The appellate court reviews the evidence weighed by the jury which tends to prove the existence of
the elemental fact in dispute, and compares it to the evidence which tends to disprove that fact. 
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The court is authorized to
disagree with the jury's determination, even if probative evidence exists which supports the verdict. 
Clewis, 922 S.W.2d at 133. However, factual sufficiency review must be appropriately deferential
so as to avoid the appellate court's substituting its own judgment for that of the fact finder. The
court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight
and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where there is conflicting
evidence, the jury's verdict on such matters is generally regarded as conclusive. See VanZandt v.
State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, pet. ref'd). Ultimately, a reviewing court must
ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside "only if the
evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly
outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." 
Ortiz v. State, No. 73692, 2002 WL 31116634, at * 5 (Tex. Crim. App. Sept. 25, 2002).

 Moreover, in criminal matters, the sufficiency of the evidence is measured against the offense
as defined by a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily
restrict the State's theories of liability, and adequately describes the particular offense for which the
defendant is tried. Id. 

 In the instant case, Appellant was convicted of the lesser-included offense of murder. (6) The
court's charge authorized the jury to find Appellant guilty of the lesser-included offense of murder
if it had a reasonable doubt as to capital murder, but did believe beyond a reasonable doubt, that
Appellant did then and there intend to cause serious bodily injury to Dusty Carmack and with said
intent to cause serious bodily injury did commit an act clearly dangerous to human life, to wit: 
causing Dusty Carmack's head to strike or come in contact with an unknown object. Appellant
argues that no rational trier of fact could find beyond a reasonable doubt any theory relating to the
cause of Dusty's death other than that Dusty fell in the shower. We disagree.

 A culpable mental state may be established by circumstantial evidence. See Barcenes v.
State, 940 S.W.2d 739, 744-45 (Tex. App.-San Antonio 1997, pet. ref'd). Moreover, cause of death
can be established both by expert medical testimony and by circumstantial evidence. Id. at 745. The
evidence presented at trial was legally sufficient to prove that Appellant intended to cause serious
bodily injury to Dusty Carmack and, with said intent to cause serious bodily injury, did commit an
act clearly dangerous to human life by causing Dusty Carmack's head to strike or come in contact
with an unknown object. 

 At approximately 3:00 p.m., Nealy left Dusty alone with Appellant and in his care. By 4:30
p.m., Appellant had contacted 9-1-1 advising them of Dusty's head injuries. It is undisputed that no
other person was in the apartment with Appellant and Dusty during this time period.

 Three medical doctors testified regarding the extent and nature of Dusty's injuries. Dr.
McClain testified that during the autopsy, in addition to the multiple external bruises and abrasions
noted about Dusty's body, it was also determined that Dusty had retinal hemorrhaging as well as
hemorrhaging in the back of the head and in his forehead, subdural hemorrhaging on the right side
of the brain and bruising and hemorrhaging in his abdomen. Dr. McClain testified that the bruises
on Dusty's forehead and abdomen were the result of blunt force trauma and categorized the force
necessary to produce the injuries Dusty sustained as that which might result from an automobile
accident. Dr. McClain concluded that Dusty could not have received a fatal head injury from a
simple fall. Similarly, Dr. Slade, the treating neurosurgeon, testified that while it was "perhaps
possible" that Dusty's injuries resulted from falling in the shower, such an event was "unlikely" the
cause of his injuries. To the contrary, Dr. Uscinski, Appellant's expert witness, testified that it was
his opinion that Dusty suffered injury to the brain when he fell in the shower and hit the back of his
head, had a seizure, and stopped breathing. 

 Appellant argues that his historical account as recounted in testimony by Harrison and
Nelson, among others, is supported by the expert testimony of both Dr. Slade and Dr. Uscinski. 
However, although Dr. Slade opined that it was "perhaps possible" that Dusty's injuries resulted
from Appellant's account of the incident, Dr. Slade also stated that it was "unlikely." We conclude
that there was undoubtedly some evidence to allow rational trier of fact to find beyond a reasonable
doubt that Appellant intended to cause serious bodily injury to Dusty Carmack, and with said intent,
did commit an act clearly dangerous to human life by causing Dusty Carmack's head to strike or
come in contact with an unknown object. 

 Moreover, in considering the factual sufficiency of the evidence, we iterate that our
evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and
credibility of witness testimony, see Santellan, 939 S.W.2d at 164, and that where there is
conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. See
VanZandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, pet. ref'd). It follows that the jury
was entitled to find that Dr. Slade and Dr. McClain were more credible witnesses than Dr. Uscinski. 
See Thompson v. State, 54 S.W.3d 88, 97 (Tex. App.-Tyler 2001, no pet.). Moreover, the jury
could logically infer from medical evidence of Dusty's injuries, coupled with Nealy's description
of Dusty's normal physical condition when she left him alone with Appellant, that it was most
probable that Appellant inflicted the injuries on Dusty that resulted in his death, while discounting
the version of the story offered by Appellant through witnesses Harrison and Nelson. Id. Our
review of the record as a whole does not uncover any evidence so as to cause us to conclude that the
proof of guilt is so obviously weak as to undermine our confidence in the jury's verdict, nor that the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Therefore,
we hold that the evidence was both legally and factually sufficient to support the jury's verdict. 
Appellant's issues one, two and three are overruled.


Improper Jury Argument

 In his fourth issue, Appellant contends that the prosecutor's statement in closing arguments
that "only two people know, Dusty and the defendant" constituted impermissible jury argument as
a comment on Appellant's election not to testify in accord with his Fifth Amendment rights. As a
prerequisite to presenting a complaint for appellate review, the record must show that the complaint
was made to the trial court by a timely request, objection, or motion that stated the grounds for the
ruling that the complaining party sought from the trial court with sufficient specificity to make the
trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex.
R. App. P. 33.1(a)(1)(A). 

 In the case at hand, Appellant engaged in an off-the-record discussion with the trial judge. 
The substance of Appellant's objection is totally omitted from the record. Moreover, the trial judge
gives Appellant ample opportunity to specifically state his objection, "if any[,]" for the record, to
which Appellant replied, "I did, Your Honor." Furthermore, based on our review of the record, and
given the many nuances of the law concerning improper jury argument in this context, we do not
believe that the specific grounds urged by Appellant for his objection were apparent from the
context. As such, we hold that by failing to specifically object on the record, even after the trial
court gave him ample opportunity to do so, Appellant has waived the error, if any, of which he now
complains. Appellant's fourth issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 JAMES T. WORTHEN 

 Justice


Opinion delivered December 18, 2002. 

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.





















(DO NOT PUBLISH)
1. See Tex. Pen. Code Ann. § 19.03(a)(8) (Vernon 1994) (capital murder).
2. City of Longview Police Officer James Nelson ("Officer Nelson") spoke to Appellant at the hospital
following the incident. Appellant told Officer Nelson that Dusty was in the shower and that Appellant looked away
to retrieve a wash rag, heard a noise and looked down to see Dusty lying on the shower floor. 
3. Dr. McClain later testified that the bruises on the side of Dusty's face and chin were the type of injuries
consistent with someone forcefully grabbing his neck or chin, not a light touch.
4. Dr. McClain further testified that the retinal hemorrhaging was an indication of blunt trauma.
5. A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency
of the evidence. See Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). Therefore, Appellant's first
and third issues are addressed together as a legal sufficiency challenge.
6. See Ex parte McClelland, 588 S.W.2d 957, 959 (Tex. Crim. App. 1979) (murder is a lesser-included
offense of capital murder).