NO.
12-06-00255-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

RICKY MATTHEW SANDERS,      §          APPEAL FROM THE 420TH

APPELLANT

 

V.        §          JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          NACOGDOCHES COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM
OPINION








            Appellant
Ricky Matthew Sanders appeals his conviction for the offense of aggravated
assault.  In one issue, Appellant
challenges the legal and factual sufficiency of the evidence to support the
jury’s finding that Appellant used or exhibited a deadly weapon during the
assault.  We affirm.

Background

            Appellant was indicted on the charge
of aggravated assault.[1] 
The indictment alleged that, on June 30, 2005, Appellant intentionally,
knowingly, or recklessly caused bodily injury to Dolvin Upshaw by striking
him.  It also alleged that Appellant used
or exhibited a deadly weapon, a knife, during the commission of the
assault.  Trial commenced on May 30,
2006.  The jury found Appellant guilty of
aggravated assault and sentenced him to five years of imprisonment.  This appeal followed.

 

Evidentiary Sufficiency of Deadly Weapon
Finding








            Appellant argues that the evidence
at trial was legally and factually insufficient to support the jury’s finding
that Appellant used or exhibited a deadly weapon during the assault.  More specifically, Appellant claims that
there was not sufficient evidence to support a finding that (1) the knife in
question was a deadly weapon and (2) that the knife was used or exhibited
during the assault.

Standard
of Review

            In reviewing a legal sufficiency
question, we must view the evidence in the light most favorable to the verdict
and determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
The trier of fact, here the jury, is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony.  Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994).  The
jury is entitled to draw reasonable inferences from the evidence.  Benavides v. State, 763 S.W.2d
587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d).  Likewise, reconciliation of conflicts in the
evidence is within the exclusive province of the jury.  Losada v. State, 721 S.W.2d
305, 309 (Tex. Crim. App. 1986).

            In conducting a factual sufficiency
review of the evidence supporting the jury’s verdict, we must first assume that
the evidence is legally sufficient under the Jackson
standard.  See Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996). 
We then consider all of the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it to the
evidence that tends to disprove that fact. 
See Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997).  Ultimately, we must
ask whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof in support is so obviously weak as to
undermine our confidence in the jury’s determination, or the supporting proof,
although adequate if taken alone, is greatly outweighed by contrary proof.  See Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000).

            Although we are authorized to
disagree with the jury’s determination, even if probative evidence exists that
supports the verdict, see Clewis, 922 S.W.2d at 133, our
evaluation should not substantially intrude upon the jury’s role as the sole
judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at
164.  It is not enough that we might harbor
a subjective level of reasonable doubt to overturn a conviction that is founded
on legally sufficient evidence.  See Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Where there is conflicting evidence, the jury’s
verdict on such matters is generally regarded as conclusive.  See Van Zandt v. State, 932
S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref’d).  We cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the jury’s
resolution of the conflict.  See Watson,
204 S.W.3d at 417.            

Discussion

            The Texas Penal Code defines a “deadly
weapon” as “a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or ... anything that in
the manner of its use or intended use is capable of causing death or serious
bodily injury.” Tex. Penal Code Ann. §
1.07(a)(17) (Vernon Supp. 2006).  The
Code defines “serious bodily injury” as “bodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.”  Id. §
1.07(a)(46).

            Whether a particular knife qualifies
as a deadly weapon under the Code depends upon the evidence presented.  See Thomas v. State, 821 S.W.2d
616, 620 (Tex. Crim. App. 1991).  In the
instant case, there is no evidence that the knife was “manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury.”  See McCain v. State, 22 S.W.3d
497, 502-03 (Tex. Crim. App. 2000). 
Therefore, we must ascertain if there was legally and factually
sufficient evidence to support a finding that the knife was capable of causing
death or serious bodily injury in the manner of its use or intended use.  See
Tex. Penal Code Ann. §
1.07(a)(17)(B); McCain, 22 S.W.3d at 502-03. 

            At trial, the State presented
testimony from victim Upshaw and the investigating officers, Sergeant David
Crisp and Deputy Brady Stanaland of the Nacogdoches County Sheriff’s
Department.  The State also introduced
into evidence the knife and three photographs taken at the crime scene.  These photographs were of the knife, the
injuries to Upshaw’s head, and the injuries to Upshaw’s arm.

            Upshaw testified that he and Appellant
were good friends.  On June 30, 2005,
Appellant came to Upshaw’s home where the two engaged in a conversation on
Upshaw’s back porch.  Upshaw stated that
Appellant had one hand behind his back. 
He stated that Appellant suddenly took his hand from behind his back and
hit him in the head, knocking off his glasses and injuring his head.  Upshaw felt a “thud” when he was hit and
blood “shot” from his head.  Upshaw
testified that, at the time, he believed Appellant had hit him with a rock or
some similar object.  He also stated that
he believed that he somehow knocked the object from Appellant’s hand shortly
after being hit.

            Upshaw testified that after he
knocked the object from Appellant’s hand, Appellant grabbed him by the arm and
jerked him off his porch.  Upshaw fell on
his back onto the cement sidewalk near the porch.  Appellant began screaming over and over that
he had previously warned Upshaw “I was going to kill you about my wife and my
girlfriend.”[2]  Appellant
jumped on top of Upshaw and began beating him with both fists.  Upshaw then realized that Appellant was “going
to kill me.”  Upshaw managed to fight
Appellant off.  Upshaw stated that
Appellant ran away, screaming “I told you I’m gonna kill you about my [] wife
and girlfriend.”  With blood running down
his forehead, Upshaw stumbled back into his home from the sidewalk.  As a result of his injuries, he found himself
in a confused state and had trouble remembering the number 911.

            Upshaw stated that when Sergeant
Crisp and Deputy Stanaland arrived, they found a knife, State’s Exhibit 1, on
Upshaw’s porch.  The deputies showed the
knife to him and he noticed that there was blood on the butt of the knife.  He stated that the deputies told him, “Here
is what you were hit with.”  Upshaw
testified that he believed this knife was the object Appellant had initially
struck him with and that he had knocked from Appellant’s hand.  Nonetheless, Upshaw admitted that he did not
see this knife at any point during the assault and that he did not know who
actually owned the knife.  He believed
that he did not see the knife in Appellant’s hand because it was dark outside
when the assault occurred.

            Upshaw was taken to a local hospital
where five staples were used to close his head wound.  He testified that the wound left a permanent
scar on his forehead which would require surgery to be removed.

            Sergeant David Crisp testified that
when he and Deputy Stanaland arrived at Upshaw’s home, they followed a trail of
blood from the sidewalk to the porch. 
They first noticed a watch on the sidewalk and then the knife on the
porch.  The knife, a lock blade
pocketknife, was found with the blade out. 
Drops of blood were on the handle of the knife.  They then made contact with Upshaw, who was
dazed and had a three inch open gouge on his head, which was bleeding.  His elbow was also bleeding.  Sergeant Crisp photographed the injuries and
the knife.

            During cross examination, Sergeant
Crisp admitted that the blood droppings appeared to have fallen on the knife
after the knife was already on the ground. 
He also admitted that there did not appear to be any blood on the blade
of the knife.  On redirect, he stated
that the blood droppings found on the knife would be consistent with Upshaw’s
being struck by the butt of the knife, the knife being dropped during the
ensuing struggle, and Upshaw later dripping blood onto the knife as he walked
around in a dazed state.  Based upon his
training and experience as an eleven year veteran peace officer, Sergeant Crisp
testified that the knife, even as used by Appellant, was a deadly weapon which
was capable of causing serious bodily injury. 
Sergeant Crisp also testified that he and Deputy Stanaland traveled to
Appellant’s home to arrest him.  A
struggle ensued during the arrest in which Appellant told the deputies that he
was not scared of them and that “he was going to cut us like he cut that other
guy.”

            Deputy Stanaland testified,
confirming much of Sergeant Crisp’s testimony. 
He identified the knife in question and stated that after finding it, he
was told by Upshaw that it was not his knife. 
He testified that he was not able to determine who actually owned the
knife but that he believed Appellant had used the knife during the
assault.  Based upon his two and one half
years of training and experience as a peace officer, he stated that the knife,
as it was used by Appellant, was capable of causing serious bodily injury.  He also confirmed that during the struggle to
arrest Appellant, Appellant stated that “he would cut us like he cut the other
man.”  On cross examination, Deputy
Stanaland admitted that the blood on the knife appeared to have been dropped on
the knife.  He stated that Upshaw never
told them that he had been “stuck” with a knife.  He stated that Upshaw told him that he had
been struck with an unknown object.  

            The jury was entitled to draw
reasonable inferences from the evidence. 
Benavides, 763 S.W.2d at 588-89.  Likewise, reconciliation of conflicts in the
evidence is within the exclusive province of the jury.  Losada, 721 S.W.2d at 309.  Upshaw testified that he had been hit with an
unknown object.  The knife was found,
open, near where the assault with the unknown object had occurred.  This evidence supports a finding that the
butt of the knife was used to assault Upshaw. 
Appellant’s ownership and intended use of the knife is supported by his
statement to deputies Crisp and Stanaland that he was going to “cut [them] like
he cut that other guy” and his statements to Upshaw such as “I told you I’m
gonna kill you about my [] wife and girlfriend.”  Upshaw testified about his injury from the
knife, which included testimony that the wound required five staples and that
it would leave a permanent scar.  Sergeant
Crisp testified that, as used, the knife in question was a deadly weapon.  Deputy Stanaland confirmed that the knife, as
used, was capable of causing serious bodily injury.  After a reviewing the evidence in the light
most favorable to the verdict, we hold that a rational trier of fact could have
found the element of use of a deadly weapon beyond a reasonable doubt.  Therefore, the evidence was legally
sufficient to support the jury’s deadly weapon finding.  See King, 29 S.W.3d at 562.

            Appellant has also argued that the
evidence was factually insufficient to support the deadly weapon finding.  Appellant asks us to focus on Upshaw’s
testimony that he did not see the knife and the deputies’ testimony that there
was no blood on the blade of the knife and that the blood on the knife handle
appeared to have been dripped there after the assault.  However, where there is conflicting evidence,
the jury’s verdict on such matters is generally regarded as conclusive.  See Van Zandt, 932 S.W.2d at
96.  Further, after a neutral review of
the evidence, both for and against the finding, we conclude that the proof in
support of the finding is not so obviously weak as to undermine our confidence
in the jury’s determination nor is it greatly outweighed by contrary proof.  Therefore, the evidence was factually
sufficient to support the jury’s deadly weapon finding.  See Johnson, 23 S.W.3d at 11.

            We overrule Appellant’s sole issue.

 

Disposition

            We affirm the trial
court’s judgment.

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

Opinion delivered March 7, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] See Act of
May 28, 2003, 78th Leg., R.S., ch. 1019, 2003 Tex. Gen. Laws 2963 (amended
2005) (current version at Tex. Penal
Code Ann. § 22.02 (Vernon Supp. 2006)). 





[2] Upshaw testified that Appellant was under the erroneous belief that
Upshaw was having a romantic relationship with Upshaw’s first cousin, a married
woman known by Upshaw as “Bird.” 
According to Upshaw, Appellant also erroneously believed that Bird was
both Appellant’s girlfriend and wife when, in fact, she was neither.