# NO. 12-07-00212-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *AHMAD BAILEY,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Ahmad Bailey appeals from his conviction for aggravated assault with a deadly weapon. In two issues, Appellant argues that the trial court should have sustained his ***Batson***[1] challenge to the prosecutor's peremptory jury strikes and that the evidence was legally and factually insufficient to support the verdict. We affirm.

### BACKGROUND

On August 16, 2006, Jennifer Roberts saw Appellant walking down the street in front of her home. She watched as he tried to open the door to her minivan and then as he looked into the open window of her friend's truck. Her friend, Tommy Magnoss, went out to confront Appellant. Appellant and Magnoss got into an argument. Appellant left, returning shortly thereafter with a pistol. He and Magnoss scuffled, and Magnoss retreated behind a vehicle. Appellant left again, but

---

[1] ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

returned, riding in the back seat of a car. As he passed the house, Appellant fired several rounds from the pistol. The police stopped the car almost immediately, but Appellant was able to flee.

A Smith County grand jury charged Appellant with aggravated assault with a deadly weapon. Appellant pleaded not guilty, and the matter was scheduled for a jury trial.

During jury selection, the prosecutor used peremptory strikes against four members of the jury venire who were black. Appellant objected, arguing that the strikes were racially discriminatory. The prosecutor offered reasons for the strikes, and the trial court overruled Appellant's objection.

The issue at trial was whether Appellant fired the pistol at Magnoss. Magnoss testified that he did. Magnoss called 911 during the affray, and the sound of the gunshots could be heard on the recording of his phone call. Roberts testified that she saw Appellant fire three shots in the direction of her house, which is consistent with Magnoss's testimony, although no bullets were found to have struck her house.

Appellant testified that he fired the gun three times. He testified that he did not shoot at Magnoss, but that he fired into the air. The jury convicted Appellant. Appellant admitted that he had a prior adjudication for a juvenile matter, and the jury assessed punishment at fifty years of imprisonment. This appeal followed.

## BATSON MOTION

In Appellant's first issue, he contends the trial court erred in overruling his *Batson* motion. The prosecutor used peremptory challenges against four black venire persons. At the hearing on Appellant's *Batson* motion, the prosecutor testified as to his reasons for the use of his peremptory strikes. The trial court overruled Appellant's *Batson* motion. Appellant argues that the prosecutor exercised his strikes on the basis of the race of the jurors, and not for the prosecutor's stated reasons.

### Applicable Law

A litigant may not engage in purposeful or deliberate racial discrimination in its use of peremptory jury strikes when selecting a jury. *Batson*, 476 U.S. at 84, 106 S. Ct. at 1716. A trial court follows a three step process to evaluate a claim that a litigant has made a peremptory strike based on race. *Snyder v. Louisiana*, __ U.S. __, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008); *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S. Ct. 2317, 2324, 162 L. Ed. 2d 196 (2005). First, the

moving party must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. ***Snyder***, 128 S. Ct. at 1207. Second, if that showing has been made, the other party must offer a race neutral basis for striking the juror in question. ***Id***. Third, in light of the submissions of the parties, the trial court must determine whether the moving party has shown purposeful discrimination. ***Id***.

A trial court's ruling on the issue of purposeful discrimination must be sustained unless it is clearly erroneous. ***Snyder***, 128 S. Ct. at 1207 (citing ***Hernandez v. New York***, 500 U.S. 352, 369, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)). The trial court has a pivotal role in evaluating ***Batson*** claims. ***Snyder***, 128 S. Ct. at 1208. This is because the third step of the ***Batson*** inquiry involves an evaluation of trial counsel's credibility, and the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge. ***Id***., 128 S. Ct. at 1208. Because these determinations of credibility and demeanor lie "peculiarly within a trial judge's province," in the absence of exceptional circumstances, a reviewing court should defer to the trial court's resolution of the issue. ***Id***.

Whether a facially race neutral explanation for a strike is pretextual is a question of fact. ***Watkins v. State***, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). The ultimate plausibility of a race neutral explanation is to be considered in the context of whether the opponent of the strike has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination. ***Id***.

**Analysis**

The prosecutor used four of his ten peremptory strikes on four of the five black members of the venire who could have served on the petit jury.[2] The prosecutor stated that he struck the jurors because they were young, favored rehabilitation, or knew the defense attorney. Appellant does not contend that these stated reasons were not race neutral. Rather, he argues that the stated reasons are pretextual and that this is demonstrated by the fact that the prosecutor did not strike all of the jurors who met the criteria he said he used to strike jurors.

---

[2] A fifth black juror was thought by the parties to be within the range of jurors who would serve on the jury. The prosecutor did not strike him. He did not serve because the prosecutor and Appellant both struck the same juror, making the range of those who would actually serve smaller than the parties had estimated.

Appellant is correct when he asserts that the prosecutor did not strike all the white jurors who shared the characteristics the prosecutor said caused him to strike jurors. But Appellant does not address the reasons the prosecutor gave for not striking some jurors. The prosecutor said that he struck venire person 9, a black woman, because she was young. He did not strike venire person 31, who was also young but was white. The prosecutor testified that he did not strike her because she was familiar with law enforcement officers through her employment. The prosecutor struck venire person 21, a black woman, because she failed to complete her juror card and favored rehabilitation. The prosecutor testified that he struck venire person 22, who was black, because she favored rehabilitation, and had a family member charged with capital murder. He testified that he also struck other nonminority panel members who favored rehabilitation over punishment. He said that he did not strike one nonminority panel member who favored rehabilitation because that juror had a close relationship with a member of law enforcement.

The prosecutor testified that he struck venire person 28, a black man, because he knew the defense counsel. The prosecutor testified that he customarily struck venire persons who knew the attorney for the defendant in a case he was trying. No other jurors knew Appellant's counsel.

Finally, the prosecutor did not strike venire person 38, a black man, who was in the range of those eligible to serve as jurors. The prosecutor also struck several nonminority venire members.

The trial court concluded that, based on the totality of the circumstances, Appellant had not shown that the prosecutor used his strikes with discriminatory intent. Rather, the trial court accepted the prosecutor's race neutral explanations for the strikes as well as the reasons given to explain strikes that were not made. This is the kind of judgment call or credibility assessment that the trial court is well situated to make. *Snyder*, 128 S. Ct. at 1208. The given reasons for the strikes were facially race neutral. The question, then, was whether they were a pretext for purposeful racial discrimination. In *Snyder* and in *Miller–El*, the Supreme Court found purposeful discrimination even though facially neutral explanations were offered. Those cases, however, turned on the Court's assessment that the rationales given were implausible compounded by the fact that the state did not apply those rationales consistently. *Snyder*, 128 S. Ct. at 1211 (anxiety about other obligations); *Miller-El*, 545 U.S. at 245, 125 S. Ct. at 2328 (feelings about the death penalty).

This case is similar because the prosecutor did not strike all jurors who shared specific

4

characteristics that he asserted prompted his strikes of black jurors. But the prosecutor offered plausible, and race neutral, reasons for the disparity. That the prosecutor favored jurors who had close relationships with law enforcement officers is not surprising. Nor is it surprising that these relationships would cause the prosecutor not to strike jurors he would have otherwise struck for favoring rehabilitation or for being young. The trial court heard the prosecutor's explanations for his strikes, saw the prosecutor's demeanor as he conducted both the voir dire and his response during the *Batson* hearing, and observed the venire members during the voir dire process. After reviewing the record, we cannot conclude that the trial court's decision to overrule Appellant's motion is clearly erroneous. We overrule Appellant's first issue.

## LEGAL AND FACTUAL SUFFICIENCY

In his second issue, Appellant contends the evidence is legally and factually insufficient to support his conviction.

### Standard of Review

The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317–18, 99 S. Ct. 2781, 2788–89, 61 L. Ed. 2d 560 (1979); *see also Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).

In conducting a factual sufficiency review of the evidence, we must first assume that the evidence is legally sufficient. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We view all of the evidence in a neutral light. *See Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We then consider all of the evidence weighed by the jury that tends to prove the existence of the fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan*, 939 S.W.2d at 164. A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002). A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim.

5

App. 1996).

The fact that we might harbor a subjective level of reasonable doubt is not enough to overturn a conviction that is founded on legally sufficient evidence. *See **Watson v. State**,* 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see **Clewis v. State***, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. ***Santellan***, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. ***Van Zandt v. State***, 932 S.W.2d 88, 96 (Tex.App.–El Paso 1996, pet. ref'd). A jury is in the best position to evaluate the credibility of witnesses, and we afford "due deference" to the jury's determination. ***Marshall v. State***, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

We measure the sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge. ***Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." ***Id***. As charged, the State was required to prove that Appellant intentionally or knowingly threatened Tommy Magnoss with imminent bodily injury while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2007).

**Analysis**

Appellant fired his gun out of the car window in the vicinity of Jennifer Roberts's home. Both Roberts and Magnoss testified Appellant shot his pistol in their direction and that they were in fear for their safety and for the safety of Roberts's children, who were sleeping inside the home. Both the driver and the other passenger in the car testified that Appellant shot out of the car. Appellant testified that he shot his gun as the car drove down the street past the home. Three bullet shell casings were found, one on the trunk of the car and two in the street near the home.

Appellant asserts that he must be acquitted because there is not sufficient evidence that he fired his gun in the direction of Magnoss. But shooting in a person's direction is not required to commit an aggravated assault. All that is necessary is that a defendant threaten another with

6

imminent bodily injury while using a deadly weapon. TEX. PENAL CODE ANN. § 22.02(a)(2). Nevertheless, the State unnecessarily pleaded that Appellant shot the firearm at or in the direction of Magnoss. Whether it was required to prove that additional and nonstatutory assertion is a complicated question, especially since Appellant essentially confessed that he threatened Magnoss with a gun, denying only that he aimed at him. *See generally Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) (Whether the State must prove unnecessarily pleaded facts depends on whether the variance between the evidence and the wording of the indictment is material and prejudices the defendant's substantial rights.).

We need not address this specific issue here because the parties have not addressed it, and because the evidence is legally sufficient to support the conviction even if the State had to prove that Appellant fired the gun in the direction of Magnoss. Roberts and Magnoss testified that the gun was fired in their direction, and Magnoss testified that he felt threatened. A rational trier of fact could conclude that the essential elements of the offense were proven by this testimony. Therefore, we hold that the evidence is legally sufficient to support the verdict.

In reviewing the factual sufficiency of the evidence, we look at all the evidence, both that supporting the conviction and that which is contrary to the verdict. The contrary evidence advanced by Appellant is that no police officer could testify that his version of events was not accurate, that there were no bullet holes in Roberts's home, and that Magnoss is an unreliable witness. Further, Appellant testified that he did not shoot at Magnoss.

The jury is primarily responsible for evaluating the weight to be attributed to witness testimony and for resolving any inconsistencies in the evidence. Our review of the record as a whole, with consideration given to all of the evidence, both for and against the trial court's finding, has not revealed to us evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Although there was conflicting evidence on this issue, the jury chose to believe Magnoss and Roberts and not to believe Appellant. The jury was in the best position to make this decision, and their resolution of the matter does not appear to represent an injustice or a shock to the conscience. Therefore, we hold that the evidence is factually sufficient to support the jury's verdict. We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's two issues, we **affirm** Appellant's conviction.

___SAM GRIFFITH___
Justice

Opinion delivered July 23, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)