NO. 12-08-00435-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


DONALD RAY YOUNG,
§
 APPEAL FROM THE 241ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Donald Ray Young appeals his conviction for possession of between one and four grams of
cocaine, for which he was sentenced to imprisonment for life. In one issue, Appellant argues that
the evidence was neither legally nor factually sufficient to support the trial court's judgment. We
affirm.


Background

 Appellant was charged by indictment with possession of between one and four grams of
cocaine and pleaded "not guilty." The matter proceeded to a jury trial.

 At trial, Tyler Police Detective Chris Miller testified that Tyler Police Department S.W.A.T.
team officers conducted a drug raid on a known "crack house" (1) pursuant to a "no knock" warrant. 
Miller stated that the officers endeavored to execute the warrant without being detected by the
house's occupants. However, according to Miller, as they approached the house, one of the
occupants of the house opened the door, saw the approaching police, and quickly closed the door. 
Miller testified that the officers immediately made a forced entry into the house and secured the
scene. Tyler Police Department Narcotics Unit Officer Mitch Rogers testified that eight people were
in the small house when the police entered. Miller testified that when police entered the house, he
saw Appellant enter the living room from the kitchen and immediately drop to a prone position. 

 Rogers testified that officers located a razor blade and a glass cutting board on a table in the
kitchen. Rogers explained that crack cocaine (2) is produced in large pieces and often cut into smaller
pieces by the seller. Rogers specifically identified the razor blade located in the kitchen as being
used to divide larger pieces of crack cocaine into smaller pieces for sale. Rogers further stated that
the entire house was littered with homemade crack pipes, razor blades, steel wool crack pipe
"filters," crack pipe cleaning rods, and various drug paraphernalia. 

 Rogers described Appellant and another occupant of the house as drug dealers while,
according to Rogers, the remaining occupants were drug users. Rogers further testified that two bags
of crack cocaine were found in the house. Department of Public Safety Crime Lab Forensic Chemist
Claybion Cloud III specified that one bag, which contained a number of "rocks" of crack cocaine
weighing 0.99 grams, was found under a chair in the living room near the other alleged drug dealer. 
Furthermore, Rogers testified that a second plastic bag, which contained fifteen "rocks" of crack
cocaine, was found in the drain of the kitchen sink under some dishes. Cloud testified that the
aggregate weight of the rocks found in the sink drain was 3.69 grams. Rogers stated that the total
street value of this bag of crack cocaine was three hundred dollars.

 Miller testified generally concerning the behavior of both drug dealers and drug users with
regard to crack cocaine. Miller explained that crack cocaine dealers do not leave their wares
unattended in an active crack house because any drug users present tend to quickly use the
unattended product. However, according to Miller, in the event of a drug raid, a drug dealer would
endeavor to separate himself from the drugs. Miller testified that the kitchen had only one other
door, which was locked, and that no other person in the house was seen exiting or was located within
the kitchen at that time. Thus, Miller concluded that the bag of crack cocaine rocks in the drain of
the kitchen sink belonged to Appellant, who was the only person leaving the kitchen when police
entered the house. Furthermore, Rogers testified that everyone in the house, including Appellant,
was "unemployed." However, Rogers noted that Appellant had $121.00 on his person at the time
of his arrest.

 Following the presentation of evidence and argument of counsel, the jury found Appellant
"guilty" as charged. Thereafter, a bench trial on punishment was conducted. At the trial on
punishment, Appellant pleaded "true" to two prior felony convictions alleged in the indictment. 
Ultimately, the trial court sentenced Appellant to imprisonment for life. This appeal followed.


Evidentiary Sufficiency

 In his sole issue, Appellant argues that the evidence is neither legally nor factually sufficient
to support the trial court's judgment. Specifically, Appellant argues that his mere presence in the
house is insufficient to support that he, in fact, possessed the cocaine found in the kitchen sink drain.

Legal Sufficiency

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1,
6 (Tex. App.-San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge
is whether any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to
the verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A
successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. 
See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

 The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a
charge would include one that "accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant is tried." Id. 

 In the case at hand, Appellant was charged with possession of between one and four grams
of cocaine. See Tex. Health & Safety Code Ann. §§ 481.102(3)(D), 481.115(c) (Vernon 2003
& Supp. 2008). To support Appellant's conviction for possession of a controlled substance, the State
was required to prove that Appellant (1) exercised control, management, or care over the substance
and (2) knew the matter possessed was contraband. See Poindexter v. State, 153 S.W.3d 402, 405
(Tex. Crim. App. 2005). A person acts knowingly, or with knowledge, with respect to the nature of
his conduct or to circumstances surrounding his conduct when he is aware of the nature of his
conduct or that circumstances exist. Tex. Penal Code Ann. § 6.03(b) (Vernon 2003). The State
must establish, to the requisite level of confidence, that the accused's connection with the drug was
more than just fortuitous. Poindexter, 153 S.W.3d at 406. When the accused is not in exclusive
possession of the place where the substance is found, we cannot conclude that he had knowledge of
and control over the contraband unless there are additional independent facts and circumstances
which link the accused to the contraband. Id. 

 Links that may circumstantially establish the sufficiency of the evidence to prove that a
defendant had knowing "possession" of contraband include the following: (1) the defendant's
presence when a search is conducted; (2) whether the contraband was in plain view; (3) the
defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under
the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or
narcotics when arrested; (6) whether the defendant made incriminating statements when arrested;
(7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9)
whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were
present; (11) whether the defendant owned or had the right to possess the place where the drugs were
found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant
was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt. See Evans, 202 S.W.3d at 162 n.12. It is not the number of links that is
dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. Id. 
Ultimately, the question of whether the evidence is sufficient to link the appellant to the contraband
must be answered on a case by case basis. See Whitworth v. State, 808 S.W.2d 566, 569 (Tex.
App.-Austin 1991, pet. ref'd).

 Here, Appellant was present in a known "crack house" when the search was conducted. The
entirety of the evidence of record suggests that drug use was rampant and overt in the house. There
was other contraband and drug paraphernalia located throughout the house. Furthermore, the record
reflects that the cocaine at issue was in the form of numerous "rocks" in a plastic bag located in the
drain of the kitchen sink and had an aggregate street value of three hundred dollars. When the
officers entered the house, Appellant was seen exiting the kitchen and entering the living room. 
Miller testified that the kitchen was a "small" and "confined" space. Miller confirmed that the only
other door to the kitchen was locked from the inside with a chain. There is no evidence of record
but that Appellant was the sole occupant of the kitchen at the time officers entered the house. 
Finally, Appellant was found to have a relatively large amount of cash on his person at the time of
his arrest.

 Examining the aforementioned evidence in the light most favorable to the verdict, we
conclude that the jury could have determined beyond a reasonable doubt that Appellant exercised
control, management, or care over the cocaine at issue and that he knew the matter possessed was
contraband. Therefore, we hold that the evidence is legally sufficient to support the jury verdict.

Factual Sufficiency

 Turning to Appellant's contention that the evidence is not factually sufficient to support the
jury's verdict, we must first assume that the evidence is legally sufficient under the Jackson
standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all
of the evidence weighed by the jury that tends to prove the existence of the elemental fact (3) in dispute
and compare it to the evidence that tends to disprove that fact. See Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury's
determination, even if probative evidence exists that supports the verdict, see Clewis, 922 S.W.2d
at 133, our evaluation should not substantially intrude upon the jury's role as the sole judge of the
weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where there is
conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. See Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.- El Paso 1996, pet. ref'd). Ultimately, we must ask
whether a neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Watson v. State, 204 S.W.3d
404, 417 (Tex. Crim. App. 2006) (evidence is factually insufficient only when reviewing court
objectively concludes that the great weight and preponderance of the evidence contradicts the
verdict). 

 In the instant case, a number of links between Appellant and the contraband at issue either
weigh in Appellant's favor or are not addressed by the evidence. Miller testified that Appellant did
not own the house. Further, the cocaine was not visible in plain view upon a cursory inspection of
the kitchen. Appellant was not found to be under the influence of drugs when he was arrested. 
However, the record contains testimony that persons who sell drugs often do not use drugs. Miller
testified that drug dealers do not leave their product lying around an active crack house because of
the likelihood that a drug user would steal the crack cocaine for his personal use. Miller also noted
that this was an "active" crack house occupied by numerous drug users. Further still, Appellant did
not attempt to flee upon the officers' entry into the house nor did he make any furtive gestures. 
Moreover, the evidence does not reflect that any odor associated with crack cocaine was present in
the kitchen at that time. Finally, there is no evidence of record indicating that Appellant exhibited
any conduct that indicated a consciousness of guilt.

 We have reviewed the record in its entirety. We are mindful that our evaluation should not
substantially intrude upon the trial court's role as the sole judge of the weight and credibility of
witness testimony, see Santellan, 939 S.W.2d at 164, and where there is conflicting evidence, the
trial court's verdict on such matters is generally regarded as conclusive. See Van Zandt, 932 S.W.2d
at 96. Moreover, we stress that it is not the number of links that is dispositive of the issue, but rather
the logical force of all of the evidence, both direct and circumstantial, considered on a case by case
basis. See Evans, 202 S.W.3d at 162 n.12, Whitworth, 808 S.W.2d at 569. 

 Our review of the record as a whole, with consideration given to all of the evidence, both for
and against the trial court's finding, has not revealed to us any evidence that causes us to conclude
that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof
as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the
evidence is factually sufficient to support the jury's verdict. 

 Appellant's sole issue is overruled.


Disposition


 Having overruled Appellant's sole issue, we affirm the trial court's judgment.




 SAM GRIFFITH 

 Justice



Opinion delivered August 28, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.



















 


(DO NOT PUBLISH)
1. According to Miller, a "crack house" is a house in which the drug "crack" cocaine is bought and/or sold
and in which numerous things related thereto transpire. 
2. Rogers explained that "crack cocaine" is a substance that results when powder cocaine is mixed with an
inert compound, such as baking soda. The mixture is dissolved in a liquid, often water, and cooked. The cooking
process removes the water, and results in the cocaine and baking soda being bonded as a cocaine based derivative
drug. The resultant crack cocaine resembles an off white "cookie" and is hard and somewhat brittle. 
3. As with a review for legal sufficiency, we measure the factual sufficiency of the evidence of the offense as
defined by a hypothetically correct jury charge. See Wooley v. State, 273 S.W.3d 260, 261 (Tex. Crim. App. 2008).