# NO. 12-08-00435-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DONALD RAY YOUNG,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Donald Ray Young appeals his conviction for possession of between one and four grams of cocaine, for which he was sentenced to imprisonment for life. In one issue, Appellant argues that the evidence was neither legally nor factually sufficient to support the trial court's judgment. We affirm.

### BACKGROUND

Appellant was charged by indictment with possession of between one and four grams of cocaine and pleaded "not guilty." The matter proceeded to a jury trial.

At trial, Tyler Police Detective Chris Miller testified that Tyler Police Department S.W.A.T. team officers conducted a drug raid on a known "crack house"[1] pursuant to a "no knock" warrant. Miller stated that the officers endeavored to execute the warrant without being detected by the house's occupants. However, according to Miller, as they approached the house, one of the occupants of the house opened the door, saw the approaching police, and quickly closed the door.

---

[1] According to Miller, a "crack house" is a house in which the drug "crack" cocaine is bought and/or sold and in which numerous things related thereto transpire.

Miller testified that the officers immediately made a forced entry into the house and secured the scene. Tyler Police Department Narcotics Unit Officer Mitch Rogers testified that eight people were in the small house when the police entered. Miller testified that when police entered the house, he saw Appellant enter the living room from the kitchen and immediately drop to a prone position.

Rogers testified that officers located a razor blade and a glass cutting board on a table in the kitchen. Rogers explained that crack cocaine[2] is produced in large pieces and often cut into smaller pieces by the seller. Rogers specifically identified the razor blade located in the kitchen as being used to divide larger pieces of crack cocaine into smaller pieces for sale. Rogers further stated that the entire house was littered with homemade crack pipes, razor blades, steel wool crack pipe "filters," crack pipe cleaning rods, and various drug paraphernalia.

Rogers described Appellant and another occupant of the house as drug dealers while, according to Rogers, the remaining occupants were drug users. Rogers further testified that two bags of crack cocaine were found in the house. Department of Public Safety Crime Lab Forensic Chemist Claybion Cloud III specified that one bag, which contained a number of "rocks" of crack cocaine weighing 0.99 grams, was found under a chair in the living room near the other alleged drug dealer. Furthermore, Rogers testified that a second plastic bag, which contained fifteen "rocks" of crack cocaine, was found in the drain of the kitchen sink under some dishes. Cloud testified that the aggregate weight of the rocks found in the sink drain was 3.69 grams. Rogers stated that the total street value of this bag of crack cocaine was three hundred dollars.

Miller testified generally concerning the behavior of both drug dealers and drug users with regard to crack cocaine. Miller explained that crack cocaine dealers do not leave their wares unattended in an active crack house because any drug users present tend to quickly use the unattended product. However, according to Miller, in the event of a drug raid, a drug dealer would endeavor to separate himself from the drugs. Miller testified that the kitchen had only one other door, which was locked, and that no other person in the house was seen exiting or was located within the kitchen at that time. Thus, Miller concluded that the bag of crack cocaine rocks in the drain of

---

[2] Rogers explained that "crack cocaine" is a substance that results when powder cocaine is mixed with an inert compound, such as baking soda. The mixture is dissolved in a liquid, often water, and cooked. The cooking process removes the water, and results in the cocaine and baking soda being bonded as a cocaine based derivative drug. The resultant crack cocaine resembles an off white "cookie" and is hard and somewhat brittle.

the kitchen sink belonged to Appellant, who was the only person leaving the kitchen when police entered the house. Furthermore, Rogers testified that everyone in the house, including Appellant, was "unemployed." However, Rogers noted that Appellant had $121.00 on his person at the time of his arrest.

Following the presentation of evidence and argument of counsel, the jury found Appellant "guilty" as charged. Thereafter, a bench trial on punishment was conducted. At the trial on punishment, Appellant pleaded "true" to two prior felony convictions alleged in the indictment. Ultimately, the trial court sentenced Appellant to imprisonment for life. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In his sole issue, Appellant argues that the evidence is neither legally nor factually sufficient to support the trial court's judgment. Specifically, Appellant argues that his mere presence in the house is insufficient to support that he, in fact, possessed the cocaine found in the kitchen sink drain.

## Legal Sufficiency

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

3

In the case at hand, Appellant was charged with possession of between one and four grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(c) (Vernon 2003 & Supp. 2008). To support Appellant's conviction for possession of a controlled substance, the State was required to prove that Appellant (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003). The State must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Poindexter*, 153 S.W.3d at 406. When the accused is not in exclusive possession of the place where the substance is found, we cannot conclude that he had knowledge of and control over the contraband unless there are additional independent facts and circumstances which link the accused to the contraband. *Id.*

Links that may circumstantially establish the sufficiency of the evidence to prove that a defendant had knowing "possession" of contraband include the following: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans*, 202 S.W.3d at 162 n.12. It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Id.* Ultimately, the question of whether the evidence is sufficient to link the appellant to the contraband must be answered on a case by case basis. *See Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.–Austin 1991, pet. ref'd).

Here, Appellant was present in a known "crack house" when the search was conducted. The entirety of the evidence of record suggests that drug use was rampant and overt in the house. There was other contraband and drug paraphernalia located throughout the house. Furthermore, the record reflects that the cocaine at issue was in the form of numerous "rocks" in a plastic bag located in the drain of the kitchen sink and had an aggregate street value of three hundred dollars. When the officers entered the house, Appellant was seen exiting the kitchen and entering the living room. Miller testified that the kitchen was a "small" and "confined" space. Miller confirmed that the only other door to the kitchen was locked from the inside with a chain. There is no evidence of record but that Appellant was the sole occupant of the kitchen at the time officers entered the house. Finally, Appellant was found to have a relatively large amount of cash on his person at the time of his arrest.

Examining the aforementioned evidence in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant exercised control, management, or care over the cocaine at issue and that he knew the matter possessed was contraband. Therefore, we hold that the evidence is legally sufficient to support the jury verdict.

**Factual Sufficiency**

Turning to Appellant's contention that the evidence is not factually sufficient to support the jury's verdict, we must first assume that the evidence is legally sufficient under the *Jackson* standard. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact[3] in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis*, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref'd). Ultimately, we must ask

---

[3] As with a review for legal sufficiency, we measure the factual sufficiency of the evidence of the offense as defined by a hypothetically correct jury charge. *See Wooley v. State*, 273 S.W.3d 260, 261 (Tex. Crim. App. 2008).

whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Watson v. State,* 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (evidence is factually insufficient only when reviewing court objectively concludes that the great weight and preponderance of the evidence contradicts the verdict).

In the instant case, a number of links between Appellant and the contraband at issue either weigh in Appellant's favor or are not addressed by the evidence. Miller testified that Appellant did not own the house. Further, the cocaine was not visible in plain view upon a cursory inspection of the kitchen. Appellant was not found to be under the influence of drugs when he was arrested. However, the record contains testimony that persons who sell drugs often do not use drugs. Miller testified that drug dealers do not leave their product lying around an active crack house because of the likelihood that a drug user would steal the crack cocaine for his personal use. Miller also noted that this was an "active" crack house occupied by numerous drug users. Further still, Appellant did not attempt to flee upon the officers' entry into the house nor did he make any furtive gestures. Moreover, the evidence does not reflect that any odor associated with crack cocaine was present in the kitchen at that time. Finally, there is no evidence of record indicating that Appellant exhibited any conduct that indicated a consciousness of guilt.

We have reviewed the record in its entirety. We are mindful that our evaluation should not substantially intrude upon the trial court's role as the sole judge of the weight and credibility of witness testimony, *see Santellan*, 939 S.W.2d at 164, and where there is conflicting evidence, the trial court's verdict on such matters is generally regarded as conclusive. *See Van Zandt*, 932 S.W.2d at 96. Moreover, we stress that it is not the number of links that is dispositive of the issue, but rather the logical force of all of the evidence, both direct and circumstantial, considered on a case by case basis. *See Evans*, 202 S.W.3d at 162 n.12, *Whitworth*, 808 S.W.2d at 569.

Our review of the record as a whole, with consideration given to all of the evidence, both for and against the trial court's finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof

6

as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the jury's verdict.

Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

  SAM GRIFFITH  
Justice

Opinion delivered August 28, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)